(No. 88656

# MIKE YANG, Appellee, v. CITY OF CHICAGO, Appellant.

*Opinion filed February 16, 2001.*

GARMAN, J., took no part.

Mara S. Georges, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon and Julian N. Henriques, Jr., of counsel), for appellant.

John Y.E. Lee and Colleen Young Kraus, of Ross & Hardies, of Chicago, for appellee.

Sharon K. Legenza and David Austin, law student, of Chicago, for *amici curiae* Chicago Lawyers' Committee for Civil Rights Under Law, Inc., *et al.*

JUSTICE McMORROW delivered the opinion of the court:

This case is before us on a question of Illinois law certified by the United States Court of Appeals for the Seventh Circuit. 145 Ill. 2d R. 20. The certified question is:

"Does section 9—102 of the Illinois Tort Immunity Act provide for attorneys' fees against municipalities within its definition of compensatory damages?"

For the reasons that follow, we answer the certified question in the negative.

## BACKGROUND

We take the following facts from the Seventh Circuit's opinion in *Yang v. City of Chicago*, 198 F.3d 630 (7th Cir. 1999).

"On January 8, 1991, at approximately 11:00 p.m., Mike Yang ('Yang'), co-owner of a south-side shoe store, received a call from his alarm company notifying him that the store had been burglarized. Yang called his brother, Myung and an employee, Bob. The defendants, uniformed police officers employed by the Chicago Police Department, had already arrived at the store when Yang got there. While Yang and his employee and brother busied themselves with repairing the shattered front display window, Officer Hardin prepared a police report by the front door of the store, adjacent to the broken window. Officer Brown entered the store to investigate. While inside the store looking for a board to repair the window, employee Bob noticed that Officer Brown was perusing the store in the manner of a shoplifter. Bob alerted Yang to this. As Officers Brown and Hardin began to leave, Yang noticed a bulge in Officer Brown's jacket. Believing that Officer Brown had stolen some merchandise, Yang approached the officer and requested that the merchandise be returned. At first, Officer Brown denied that he had taken any merchandise. But after a discussion that escalated into an argument, Officer Brown reached into his jacket and pulled out a pair of 'L.A. Raiders' shorts and threw them at Yang. Officers Brown and Hardin then proceeded to enter their police car

and drive away. When Yang followed, Officer Brown shoved Yang. Throughout the confrontation, Officer Hardin stood by the passenger door of the squad car. He did not speak or intervene in any manner despite Yang's repeated requests for Officer Hardin to call the police sergeant.

In an attempt to prevent Officer Brown from leaving, Yang held onto the driver's side door of the squad car to keep it open so that Officer Brown could not drive off. However, Officer Brown drove anyway, with the driver's side door ajar and Yang hanging onto the car. Officer Brown drove fast and recklessly in a zigzagging pattern, braking and accelerating, in an attempt to throw Yang off. Officer Brown also repeatedly struck Yang in the ribs with his elbow. Yang asserts that he was unable to let go of the car without being run over. Throughout the drive, Officer Hardin sat in the passenger seat. Officer Hardin did not say anything or in any way attempt to intervene. The squad car traveled, with Yang hanging on[,] more than two full city blocks until two men on the sidewalk saw what was happening and ran out to the street to stop the police car. Yang let go when the car stopped. Officer Brown then got out of the car and punched Yang in the face, knocking him to the ground. Meanwhile, Yang's brother, who had run after the squad car, arrived at the scene. Officer Brown knocked Myung Yang to the ground.

Throughout these events, Officer Hardin did not call the sergeant or attempt to stop Officer Brown in any way. However, as the Yang brothers lay in the street, Officer Hardin got out of the passenger seat of the squad car, drew his gun, pointed it at the brothers and shouted obscenities at them. The Yangs froze. Officers Hardin and Brown got back in the police car and drove away. *Yang v. Hardin*, 37 F.3d 282, 283-84 (7th Cir. 1994) (Bauer, J.)." *Yang*, 198 F.3d at 631-32.

Yang subsequently sued Brown and Hardin under 42 U.S.C. section 1983 for civil rights violations. *Yang v. Hardin*, 37 F.3d 282, 283 (7th Cir. 1994). The federal district court found against Brown and awarded Yang damages plus attorney fees, pursuant to 42 U.S.C. section 1988. *Yang*, 37 F.3d at 283. The district court further

found that both officers "acted under the color of state law"; however, it determined that Hardin was not liable under section 1983. *Yang*, 37 F.3d at 283. The Seventh Circuit reversed and held that Hardin was liable under section 1983 because he was acting within the scope of his employment, and he violated Yang's civil rights. *Yang v. City of Chicago*, 137 F.3d 522, 523 (7th Cir. 1998). On remand, the district court entered a judgment against Hardin. *Yang*, 137 F.3d at 523. Yang then requested that the City of Chicago indemnify the judgment against either Brown or Hardin, pursuant to section 9—102 of the Illinois Local Governmental and Governmental Employees Tort Immunity Act. 745 ILCS 10/9—102 (West 1998). The Seventh Circuit determined that the City was derivatively liable for the judgment against Hardin. *Yang*, 198 F.3d at 632. The district court subsequently entered a judgment in favor of Yang and against the City for $234,671.56 plus $191,628.75 in attorney fees and $10,774.42 in costs. *Yang*, 198 F.3d at 632.

On appeal, the Seventh Circuit was required to determine whether section 9—102 of the Illinois Tort Immunity Act provides for recovery of attorney fees against a municipality. The Seventh Circuit found that no controlling Illinois law exists on this issue and, therefore, that "this case presents a question of state law best left to the Illinois Supreme Court to answer." *Yang*, 198 F.3d at 632. The Seventh Circuit then certified the question to this court pursuant to Supreme Court Rule 20 (145 Ill. 2d R. 20).

This court agreed to answer the certified question. We granted leave to file an *amicus curiae* brief in support of Yang to the Chicago Lawyers' Committee for Civil Rights Under Law, Inc., together with the Mexican-American Legal Defense and Educational Fund.

## ANALYSIS

### I. Scope of Authority

Before proceeding to the question certified to us by the Seventh Circuit, we first address the City of Chicago's argument that we should revisit the federal courts' determination that Brown and Hardin were acting within the scope of their authority during the altercation with Yang. In support of this argument, the City relies on *Scadron v. City of Des Plaines*, 153 Ill. 2d 164 (1992), *Fireman's Fund Insurance Co. v. SEC Donohue, Inc.*, 176 Ill. 2d 160 (1997), and *Schrock v. Shoemaker*, 159 Ill. 2d 533 (1994). The City contends that these cases establish that this court can decide issues beyond the certified question if necessary in order for us to reach a proper resolution of the case. This reliance is misplaced.

In *Scadron*, this court agreed to answer the question certified to us by the Seventh Circuit of whether the Illinois Highway Advertising Control Act of 1971 (Ill. Rev. Stat. 1987, ch. 121, par. 501 *et seq.*) preempted the authority of home rule municipalities to regulate outdoor advertising signs in areas subject to the Act. *Scadron*, 153 Ill. 2d at 168. We found that, in order to answer the certified question, we had to first determine whether a home rule unit had the power to regulate those signs. *Scadron*, 153 Ill. 2d at 174. Such a determination was a necessary prerequisite to answering the certified question before us. In the case at bar, however, the City asks us to revisit an issue already decided by the Seventh Circuit, and not certified to this court, regarding whether Hardin and Brown were acting within the scope of their authority during the altercation with Yang. This is an entirely different issue from the question of whether attorney fees are included within the definition of compensatory damages in the Tort Immunity Act. The federal courts have decided that Hardin and Brown were acting within the scope of their authority, and the United States

Supreme Court denied the City's petition for *certiorari* on that issue, putting an end to that litigation. This court is not a court of review for federal court decisions. Therefore, we are restricted to the question certified to us.

Moreover, both *Fireman's Fund* and *Schrock* involved questions certified to our appellate court by an Illinois circuit court for interlocutory review, pursuant to Supreme Court Rule 308 (134 Ill. 2d R. 308), and then appealed to this court. Where "this court allows a petition for leave to appeal pursuant to Rule 315(a), the scope of our review is not limited to determining whether the appellate court answered the certified questions correctly. Pursuant to Supreme Court Rule 366(a)(5), this court may 'enter any judgment and make any order that ought to have been given or made, and make any other and further orders and grant any relief *** that the case may require.' " *Schrock*, 159 Ill. 2d at 537, quoting 134 Ill. 2d R. 366(a)(5); see also *Fireman's Fund*, 176 Ill. 2d 160 (modifying question certified to appellate court for interlocutory review pursuant to Supreme Court Rule 308 and then appealed to Illinois Supreme Court). The questions in both *Schrock* and *Fireman's Fund* were not certified to this court pursuant to Rule 20. We therefore find these cases inapposite.

II. Certified Question

Yang brought suit against Brown and Hardin under 42 U.S.C. section 1983 for violation of his civil rights. Under 42 U.S.C. section 1988, a court may allow the prevailing party in a section 1983 action to recover attorney fees. Specifically, section 1988 provides that "the court, in its discretion, may allow the prevailing party *** a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b) (1994). Therefore, section 1988 authorizes an award of attorney fees against Brown and Hardin, as both Brown and Hardin were held liable to Yang

under section 1983. However, Yang seeks to recover attorney fees, not from Brown and Hardin, but from the City of Chicago. Before the federal courts, Yang relied on section 9—102 of the Illinois Tort Immunity Act in arguing that the City of Chicago is liable to him for the attorney fees he incurred in his lawsuits against Brown and Hardin. Section 9—102 of the Illinois Tort Immunity Act provides:

> "A local public entity is empowered and directed to pay any tort judgment or settlement for compensatory damages for which it or an employee while acting within the scope of his employment is liable in the manner provided in this Article." 745 ILCS 10/9—102 (West 1998).

The Seventh Circuit certified to this court the question of whether section 9—102 of the Illinois Tort Immunity Act provides for attorney fees against municipalities within its definition of compensatory damages. Because this issue involves the interpretation of a statute, which is a question of law, our review is *de novo*. *In re Consolidated Objections to Tax Levies of School District No. 205*, 193 Ill. 2d 490, 496 (2000).

This court's primary objective in construing section 9—102 is to "ascertain and give effect to the intention of the legislature." *Harinek v. 161 North Clark Street Ltd. Partnership*, 181 Ill. 2d 335, 340 (1998). The statute's plain language is the best indicator of the legislature's intent. *Bubb v. Springfield School District 186*, 167 Ill. 2d 372, 381 (1995). This court will not depart from the statute's plain language by reading into it exceptions, limitations or conditions that conflict with the express legislative intent. *In re Consolidated Objections*, 193 Ill. 2d at 496, citing *Barnett v. Zion Park District*, 171 Ill. 2d 378, 389 (1996). Further, where a statute's language is clear and unambiguous, we will not resort to other aids of construction. *In re Consolidated Objections*, 193 Ill. 2d at 496, citing *Gem Electronics of Monmouth, Inc. v. Department of Revenue*, 183 Ill. 2d 470, 475 (1998).

The term "compensatory damages" is not defined in section 9—102 or in any part of the Tort Immunity Act. However, this court has recently defined compensatory damages in the context of the Tort Immunity Act in *In re Consolidated Objections*, a case decided after briefing and oral argument had been completed in this case.

Relying on "the plain and ordinary meaning of the word," this court found in *In re Consolidated Objections* that "[c]ompensatory damages are '[d]amages sufficient in amount to indemnify the injured person for the loss suffered.' " *In re Consolidated Objections*, 193 Ill. 2d at 497, quoting Black's Law Dictionary 394 (7th ed. 1999). We further found that damages are " '[m]oney claimed by, or ordered to be paid to, a person as compensation for loss or injury ([*e.g.*] the plaintiff seeks $8,000 in damages from the defendant).' " *In re Consolidated Objections*, 193 Ill. 2d at 497, quoting Black's Law Dictionary 393 (7th ed. 1999). In that case, this court determined that " 'compensatory damages' is a monetary award paid to a person as compensation for loss or injury" and that "use of the term 'compensatory damages' in section 9—102 limits application of that provision to the payment of monetary awards in *tort judgments* or settlements." (Emphasis added.) *In re Consolidated Objections*, 193 Ill. 2d at 497-98.

A "tort judgment" is defined in the Tort Immunity Act as "a final judgment founded on an injury *** proximately caused by a negligent or wrongful act or omission of a local public entity or an employee of a local public entity while acting within the scope of his employment." 745 ILCS 10/9—101(d) (West 1998). "Injury" is further defined as "death, injury to a person, or damage to or loss of property" and includes "any injury alleged in a civil action, whether based upon the Constitution of the United States or the Constitution of the State of Illinois, and the statutes or common law of Illinois or of the United States." 745 ILCS 10/1—204 (West 1998).

Attorney fees do not constitute a "tort judgment," as that term is defined in the Tort Immunity Act. Attorney fees are not the amount of money founded on an injury that was proximately caused by a wrongful act or omission of a local public entity or an employee of a local public entity. Therefore, we hold that the term compensatory damages in section 9—102 does not include attorney fees.

Yang argues that the 1986 amendment to section 9—102 was intended only to limit a plaintiff from recovering punitive damages under section 9—102. In 1986, the Illinois legislature amended section 9—102. Prior to that amendment, section 9—102 did not contain any reference to compensatory damages. Rather, it stated that "[a] local public entity is empowered and directed to pay any tort judgment or settlement for which it or an employee while acting within the scope of his employment is liable ***." Ill. Rev. Stat. 1985, ch. 85, par. 9—102. In 1986, the legislature amended the section to add the term "compensatory damages." Pub. Act 84—1431, eff. November 25, 1986. Section 9—102, as amended, states that "[a] local public entity is empowered and directed to pay any tort judgment or settlement *for compensatory damages* for which it or an employee while acting within the scope of his employment is liable ***." (Emphasis added.) 745 ILCS 10/9—102 (West 1998).

Yang argues that the Illinois legislature added the term "compensatory damages" merely to "confirm the immunity of local public entities from punitive monetary awards and not to limit other aspects of a tort judgment." However, as we stated in *In re Consolidated Objections*, "The legislative debates indicate that the legislature was concerned with eliminating the recovery of punitive damages from a local public entity. [Citation.] Nevertheless, there is no indication in those legislative debates that the term 'compensatory damages' was added only to prevent liability for punitive damages." *In re Consolidated Objec-*

*tions*, 193 Ill. 2d at 503. Moreover, we agree with the City that interpreting the term "compensatory damages" to only exclude punitive damages renders section 2—102 of the Act surplusage. Specifically, section 2—102 states that a local government is "not liable to pay punitive or exemplary damages in any action brought directly or indirectly against it by the injured party or a third party." 745 ILCS 10/2—102 (West 1998). As the City states, "[i]f the language in section 9—102 requiring local governments to pay only 'compensatory damages' excluded no more than punitive damage awards, it would be mere surplusage, adding nothing to section 2—102." We construe a statute so that no term is rendered superfluous or meaningless, when the statute is examined as a whole. *Texaco-Cities Service Pipeline Co. v. McGaw*, 182 Ill. 2d 262, 270 (1998). Thus, we reject Yang's argument that the legislature's addition of the term "compensatory damages" was meant only to prohibit a plaintiff from recovering punitive damages from a municipality.

Yang further argues that the Illinois legislature did not "choose to exclude attorney fees or costs from indemnification under the Act." According to Yang, if the legislature had intended to exclude attorney fees, it could have explicitly done so. However, just as the legislature could have explicitly excluded attorney fees in section 9—102, it could have explicitly provided for recovery of them. Unlike Congress' provision in section 1988 which allows for recovery of attorney fees, the Illinois legislature did not allow for recovery of such fees in section 9—102.

Indeed, the Illinois legislature has both specifically provided for attorney fees and expressly distinguished attorney fees from damages in other statutes. For example, as the City points out, the Uniform Conviction Information Act permits a court to award both compensatory damages and attorney fees. 20 ILCS 2635/15(A) (West 1998) ("In any action brought pursuant to this Act, an

individual aggrieved by any violation of this Act shall be entitled to recover actual and general compensatory damages for each violation, together with costs and attorney's fees reasonably incurred"). In addition, the City cites to 27 other statutes that distinguish between actual damages and attorney fees.[1] Thus, where the legislature wishes to provide for recovery of attorney fees, it can include an express provision allowing for such recovery within the plain language of the statute.

Yang makes two related arguments that the legislative purpose of section 9—102 establishes that attorney fees are part of the total judgment for compensatory damages. First, Yang contends that the legislative purpose of section 9—102 is to allow a plaintiff to fully recover for injuries suffered as a result of local officials' abuse of their powers. According to Yang, if a prevailing civil rights plaintiff cannot recover attorney fees, he or she will have no incentive to pursue a civil rights claim. In addition, Yang argues that section 9—102 is also intended to protect government employees from liability stemming from incidents conducted while those employees were acting within the scope of their employment. Thus, Yang argues that government employees should not have to bear a financial burden for liability arising out of conduct

---

[1]70 ILCS 2605/19 (West 1998); 105 ILCS 425/26.2 (West 1998); 110 ILCS 25/9 (West 1998); 210 ILCS 35/10(6) (West 1998); 210 ILCS 45/3—602 (West 1998); 215 ILCS 5/1021 (West 1998); 215 ILCS 155/25 (West 1998); 225 ILCS 410/2A—6, 3B—6 (West 1998); 310 ILCS 60/10.1 (West 1998); 625 ILCS 5/6—305.1(c) (West 1998); 625 ILCS 5/18c—7504(1) (West 1998); 720 ILCS 5/12—7.1(c) (West 1998); 720 ILCS 5/21—1.2(c) (West 1998); 735 ILCS 5/2—203(c) (West 1998); 740 ILCS 10/7(2) (West 1998); 740 ILCS 110/15 (West 1998); 745 ILCS 70/12 (West 1998); 775 ILCS 5/8B—104 (West 1998); 815 ILCS 505/2W (West 1998); 815 ILCS 602/5—120 (West 1998); 815 ILCS 605/11 (West 1998); 815 ILCS 615/45 (West 1998); 815 ILCS 620/505 (West 1998); 815 ILCS 637/30 (West 1998); 815 ILCS 655/4 (West 1998); 820 ILCS 40/12(d) (West 1998); 820 ILCS 55/15(d) (West 1998).

within the scope of their employment. However, Yang cites to no portion of the Act that provides for a "full recovery" which includes attorney fees. As it is currently written, section 9—102 limits government indemnification to compensatory damages. As we have determined, such damages do not include attorney fees.

Finally, Yang argues that the legislative purposes of section 1983 and section 1988 establish that the City should be responsible for Yang's attorney fees under section 9—102. While we agree that, pursuant to section 1988, a prevailing plaintiff is entitled to collect attorney fees, we cannot extend section 1988's language to section 9—102. We have determined that the plain language of section 9—102 does not provide for attorney fees.

## CONCLUSION

For the foregoing reasons, we answer the certified question "Does section 9—102 of the Illinois Tort Immunity Act provide for attorneys' fees against municipalities within its definition of compensatory damages?" in the negative.

*Certified question answered.*

JUSTICE GARMAN took no part in the consideration or decision of this case.