In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1569

Margaret M. Carver and Randall S. Carmean,

Plaintiffs-Appellants,

v.

Sheriff of LaSalle County, Illinois,

Defendant,

and

LaSalle County, Illinois,

Appellee.

Appeal from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 94 C 2240--Charles R. Norgle, Sr., Judge.

Argued November 9, 2000 Decided March 15, 2001

Before Fairchild, Easterbrook, and Manion,
Circuit Judges.

Easterbrook, Circuit Judge.  When Anthony
Condie was Sheriff of LaSalle County,
Illinois, two of his employees filed suit
under 42 U.S.C. sec.1983 and Title VII of
the Civil Rights Act of 1964. Plaintiffs
contended that Sheriff Condie perpetrated
sex discrimination and other wrongs.
Litigation against sheriffs in Illinois
must take account of the fact that,
although each county's sheriff is an
elected official, the sheriff's budget
(and thus the source of funds for paying
a judgment) depends on the county board
(the county's legislative branch).
Plaintiffs therefore named LaSalle County
as an additional defendant. But the
County sought and procured its dismissal,
persuading the district judge that it
could not control, and thus should not be
responsible for, Sheriff Condie's
activities. See Thompson v. Duke, 882
F.2d 1180 (7th Cir. 1989) (a sheriff is

not a county's policymaker in Illinois, so a county may not be held liable under sec.1983 for a sheriff's misconduct, given Monell v. Department of Social Services, 436 U.S. 658 (1978)). With the County gone, Sheriff Condie settled the case for a promise to pay plaintiffs $500,000, and the district court used this promise as the basis for a money judgment. Ever since, plaintiffs have been trying without success to collect.

Condie is not personally liable on this judgment. The sec.1983 suit was against him in his official capacity (which is to say, against the office, see Will v. Michigan Department of State Police, 491 U.S. 58 (1989)), and the Title VII claim necessarily was an official-capacity action because only an "employer" is covered by that statute. We held in Williams v. Banning, 72 F.3d 552 (7th Cir. 1995), that even a supervisor is not a proper defendant in Title VII; the suit must proceed against the employer as an entity rather than against a natural person. Thus the Title VII claim necessarily was an official-capacity suit. Cf. Walker v. Snyder, 213 F.3d 344 (7th Cir. 2000). Because Condie is no longer the sheriff, we have recaptioned the case. But plaintiffs, holding a judgment against the Sheriff's Office, have a problem: The Sheriff's Office lacks funds and does not have the power to tax. This led the plaintiffs to commence proceedings under Fed. R. Civ. P. 69 against the County, asserting that it either is required to indemnify the Sheriff's Office or is directly liable. Either way, the judgment would be paid from the County's bank accounts. The district court initially dismissed this proceeding, but we reversed, holding that it is a proper invocation of Rule 69. Carver v. Condie, 169 F.3d 469 (7th Cir. 1999). On remand, the district court dismissed a second time, concluding that the County is not responsible for payment. 2000 U.S. Dist. Lexis 1751 (N.D. Ill. Feb. 10, 2000).

Our case is just one instance of a recurring question: Who pays official-capacity judgments in Illinois when the wrongdoer is an independently-elected officer? Sheriffs, treasurers, clerks of court, and several other officers within Illinois counties are elected directly by the people and establish their own

policies, but they lack authority to levy taxes or establish their own budgets. This leads the independently-elected officers to contend that the counties must pay; but the counties, which are unable to control the conduct of the officers, insist that they cannot be held liable because an official-capacity judgment runs against the office and not against an "employee" of the county. The law of Illinois does not provide a clean solution to this conflict, in which each insists that the other must pay.

Let us start with the possibility that federal law requires the county to pay. Plaintiffs insist that this is so, but no free-standing rule of federal law requires any particular state or local entity to pay a judgment. Neither sec.1983 nor Title VII provides which state actor is responsible for paying a given judgment or how the money will be raised; neither statute authorizes sheriffs to write checks on county treasuries, if state law denies sheriffs that power. If, as the County insists, Sheriff Condie overstepped his authority by agreeing to pay $500,000, then the settlement must be set aside and the litigation resume, for a person purporting to settle a federal suit needs actual authority to do so. United States v. LaCroix, 166 F.3d 921 (7th Cir. 1999); Morgan v. South Bend School Corp., 797 F.2d 471 (7th Cir. 1986). Federal law does not empower a state officer to "agree" with plaintiffs, in violation of state law, to shift financial responsibility to an innocent unit of government. See Dunn v. Carey, 808 F.2d 555 (7th Cir. 1986).

Identification of an "employer" under Title VII is a question of federal law. See Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 754-55 (1998). But the source of funds need not coincide with the identity of the employer. Congress enacts budgets for the Bureau of Prisons and the Marshal Service (the federal bodies closest to the functions of a sheriff in Illinois), just as a county controls a sheriff's budget, but financial control does not make Congress the "employer" of a prison guard or a marshal for purposes of Title VII. Likewise a firm that uses an independent contractor often controls the contractor's purse strings, but the entity that supplies the funds is not

automatically the relevant employer under Title VII. If the independent contractor adheres to corporate formalities when dealing with its own staff, it is a separate "employer," and the "deep pocket" is not liable for the independent contractor's wrongs (or the reverse). See Vakharia v. Swedish Covenant Hospital, 190 F.3d 799 (7th Cir. 1999); Papa v. Katy Industries, Inc., 166 F.3d 937 (7th Cir. 1999); Sharpe v. Jefferson Distributing Co., 148 F.3d 676 (7th Cir. 1998); Ost v. West Suburban Travelers Limousines, Inc., 88 F.3d 435 (7th Cir. 1996). Plaintiffs do not doubt that the Sheriff's Office and LaSalle County have adhered to the formalities that make them separate entities, and thus separate "employers" for purposes of Title VII. Thus the questions "who pays, and from what kitty?" must find their answers in Illinois law.

Plaintiffs contend that 745 ILCS 10/9-102 supplies the answers. This portion of the state's Tort Immunity Act provides:

A local public entity is empowered and directed to pay any tort judgment or settlement for compensatory damages for which it or an employee while acting within the scope of his employment is liable in the manner provided in this Article. All other provisions of this Article, including but not limited to the payment of judgments and settlements in installments, the issuance of bonds, the maintenance of rates and charges, and the levy of taxes shall be equally applicable to judgments or settlements relating to both a local public entity or an employee and those undertakings assumed by a local public entity in intergovernmental joint self-insurance contracts. A local public entity may make payments to settle or compromise a claim or action which has been or might be filed or instituted against it when the governing body or person vested by law or ordinance with authority to make over-all policy decisions for such entity considers it advisable to enter into such a settlement or compromise.

The first sentence of sec.10/9-102 requires a "local public entity" to pay a "tort judgment or settlement for compensatory damages" for which "it" or "an employee acting within the scope of his employment" is liable. A county is a

"local public entity," and we may assume that Illinois would treat both sec.1983 and Title VII as establishing "torts" for purposes of sec.10/9-102. (The Supreme Court of Illinois made the same assumption in Yang v. Chicago, 2001 Ill. Lexis 191 (Feb. 16, 2001).) An individual-capacity suit against a sheriff would be one against an "employee"--though Moy v. Cook County, 159 Ill. 519, 542, 640 N.E.2d 926, 931 (1994), holds that for some other purposes it is improper to call the sheriff a county's employee, given the sheriff's status as an independently-elected officer who can't be hired or fired by a county. More to the point, an official-capacity suit such as ours is against a sheriff's office, not against any "employee," and for this purpose the sheriff's office itself seems to be the "local public entity." Then sec.10/9-102 tells the Sheriff's Office that it "is empowered and directed to pay" the judgment--but it does not make any funds available to fulfil this command. Because a sheriff's office cannot be deemed an "employee" of a county, and because a sheriff's office is not itself a county, plaintiffs' reliance on the first sentence is problematic.

Perhaps the last sentence of sec.10/9-102--which says that a "local public entity" must pay a settlement when "the governing body or person vested by law or ordinance with authority to make over-all policy decisions for such entity considers it advisable to enter into such a settlement or compromise"--has more to offer. If the only "entity" to which this sentence refers is the Sheriff's Office, then it adds nothing. But it might be possible to treat a county as the "entity" to which this sentence refers, and to say that a sheriff is the person "with authority to make over-all policy decisions for such entity" because no one else in a county appears to have any authority to compromise litigation filed against a sheriff's office. Driving this reading would be the assumption that Illinois law permits someone to hold both the settlement power and the purse strings for official-capacity suits against sheriffs; and the only visible person is the sheriff. Yet this reading would take considerable liberty with the statutory language, for the sentence points to "the governing body or person vested by law or ordinance with authority to make over-all policy decisions for

such entity". A sheriff has the authority to make "over-all policy decisions" for his own office, but only the county board has that power for the county as an "entity." See 55 ILCS 5/6-1001. Perhaps, then, the last sentence of sec.10/9-102 implies that in an official-capacity action against a sheriff's office, only county officials may compromise the litigation--even though a county is neither the "employer" for purposes of Title VII nor the party responsible under sec.1983. Such a division of responsibility from control of litigation is possible--for example, the Attorney General controls all suits against all federal agencies under Title VII, and Congress supplies the funding for disbursal after certification by the Secretary of the Treasury. Federal statutes make this allocation of authority a good deal clearer than does sec.10/9-102, however. See 28 U.S.C. sec.sec.516, 2414.

Next consider 55 ILCS 5/5-1002, the statute on which plaintiffs principally rely. Unlike sec.10/9-102, this deals directly with sheriffs and their anomalous position in the state's organization chart:

If any injury to the person or property of another is caused by a sheriff or any deputy sheriff, while the sheriff or deputy is engaged in the performance of his or her duties as such, and without the contributory negligence of the injured person or the owner of the injured property, or the agent or servant of the injured person or owner, the county shall indemnify the sheriff or deputy, as the case may be, for any judgment recovered against him or her as the result of that injury, except where the injury results from the wilful misconduct of the sheriff or deputy, as the case may be, to the extent of not to exceed $500,000, including costs of action. Any sheriff or deputy, as the case may be, or any person who, at the time of performing such an act complained of, was a sheriff or deputy sheriff, who is made a party defendant to any such action shall, within 10 days of service of process upon him or her, notify the county, of the fact that the action has been instituted, and that he or she has been made a party defendant to the action. The notice must be in writing, and be filed in the office of the State's

Attorney and also in the office of the county clerk, either by himself or herself, his or her agent or attorney. The notice shall state in substance, that the sheriff or deputy sheriff, as the case may be, (naming him or her), has been served with process and made a party defendant to an action wherein it is claimed that a person has suffered injury to his or her person or property caused by that sheriff or deputy sheriff stating the title and number of the case; the Court wherein the action is pending; and the date the sheriff or deputy sheriff was served with process in the action, and made a party defendant thereto. The county which is or may be liable to indemnify the sheriff or deputy sheriff, as the case may be, may intervene in the action against the sheriff or deputy sheriff, as the case may be, and shall be permitted to appear and defend. The duty of the county to indemnify any sheriff or deputy sheriff for any judgment recovered against him or her is conditioned upon receiving notice of the filing of any such action in the manner and form hereinabove described.

Under this law the county is responsible for payment when a sheriff or deputy sheriff is held liable for wrongs that are not attributable to "wilful misconduct." A sheriff or deputy who wants to shift financial responsibility in this way, however, must notify the county and allow it to take over the defense (just as an insurer may control the defense when it may be obliged to indemnify the defendant). LaSalle County points out that Sheriff Condie did not give the required notice, and as the statute makes this notice a sine qua non (just as insureds must notify their carriers) our plaintiffs are out of luck. It is troubling that Illinois would allow the rights of the victims to be undercut so easily by the (further) neglect of the wrongdoer. Worse from plaintiffs' perspective, sec.5/5-1002 deals with personal-capacity judgments: "the county shall indemnify the sheriff or deputy, as the case may be". It does not deal in so many words with official-capacity suits in which a sheriff's office (the "employer" under Title VII) is responsible. And sec.5/5-1002 is a poor match for Title VII for yet another reason: it excludes "wilful misconduct," while all violations of Title VII require

discriminatory intent, a form of wilful misconduct. See Kolstad v. American Dental Association, 527 U.S. 526 (1999). So sec.5/5-1002 does not provide a silver bullet here.

Plaintiffs served on LaSalle County a citation to discover assets, seeking to learn whether appropriated but unexpended funds were available to the Sheriff's Office. Their theory is that these funds may be diverted to pay the judgment. The district court dismissed the enforcement proceeding without explaining what, if anything, is wrong with this means of collection. The parties' briefs in this court are no more informative. Plaintiffs say that the entire budget of the Sheriff's Office is available to satisfy the judgment, but they do not discuss the possibility that LaSalle County (like Congress) appropriates funds with line-item restrictions. That the Sheriff's Office has a budget of, say, $2 million per year does not mean that the sheriff can spend the money on anything he likes; some of the funds may be restricted to the payment of salaries, and so on. LaSalle County has ignored this subject altogether, so we have no idea what funds are available to the Sheriff's Office and what restrictions, if any, have been placed on their use. Nor can we tell whether Illinois law allows counties to impose line-item restrictions that prevent sheriffs from paying judgments from appropriated funds.

Restrictions on expenditures would not preclude enforcement of the judgment by seizing assets later; if LaSalle County appropriates $200,000 to purchase vehicles for the sheriff and his deputies, plaintiffs could swoop in and seize the cars as soon as they are delivered, selling them to generate funds. But can this really be the only means Illinois law provides for paying official-capacity judgments, when the county is unwilling to cooperate in the process? It seems unlikely that Illinois would find a sequence of purchases, seizures, and sales, dragging out over several years and leaving sheriff's personnel without cars, desks, computers, and guns in the interim, to be the optimal means of satisfying judgments.

LaSalle County urges on us the theory that a sheriff in Illinois is utterly

unable to settle litigation. This can't be right as stated; surely a county could appropriate a judgment fund (as Congress has done) and make it available to pay judgments (including settlements); and like Congress a county doubtless could set conditions under which settlement authority would be exercised. What LaSalle County must mean, therefore, is that it has neither established a fund for the payment of judgments nor enacted general legislation specifying the conditions under which particular officers may settle litigation. At oral argument counsel for LaSalle County analogized Sheriff Carver's settlement to a decision to purchase a costly piece of equipment--and we know from Pucinski v. Cook County, 192 Ill. 2d 540, 737 N.E.2d 225 (2000), that independently elected county officers can't bypass the county board's fiscal authority by making contracts for the purchase of equipment. (Pucinski involved a portion of the state's Counties Code that is limited to Cook County, but plaintiffs have not identified any provision of state law that would lead to a different resolution in LaSalle County.)

By analogy to Pucinski, all an independently-elected county officer may do when settling litigation is recommend to the county board that funds be appropriated (with a legal commitment, per the judgment, to expend them for plaintiffs' benefit if appropriations ensue). Similarly, a member of the federal cabinet, unable to promise that Congress will appropriate funds, may promise as part of a consent decree to use best efforts to secure money (and to exercise all available discretion under existing appropriations) and may be penalized by the court for failing to carry through. See United States v. Chicago Board of Education, 799 F.2d 281 (7th Cir. 1986). If this is the right way to understand Sheriff Condie's promise, however, then the Sheriff's Office is out of compliance, for it is doing nothing to obtain funds to pay the judgment. Then the plaintiffs' entitlement would be, not immediate payment, but an order compelling the incumbent sheriff to get a move on finding the necessary funds (or, at plaintiffs' option, to an order vacating the settlement and placing the case back on the docket for decision on the merits). It is tempting to say that,

because the Sheriff's promise formed the basis of a federal judgment, we could resolve its meaning and effect as a matter of federal law; but the district court put into the judgment no more than Sheriff Condie had the authority to promise, and the extent of that authority is a matter of state law. This makes our task of interpretation especially difficult.

Suppose that an order requiring a sheriff to seek funding from a county is the only possible enforcement tool after a sheriff settles official-capacity litigation. That has an unsettling implication for cases that are not settled, for it implies that no money judgment against a sheriff's office is enforceable in Illinois. The alternative to settlement is a decision by the court, and LaSalle County's argument that it has plenary power not to appropriate funds to pay judgments implies that it could refuse to pay--and deny plaintiffs any means of collecting--even if this case had been litigated to the hilt rather than settled. That would put Illinois out of compliance with federal law--for Fitzpatrick v. Bitzer, 427 U.S. 445 (1976), holds that Title VII is binding on the states, and may be enforced in federal court, by virtue of national power under sec.5 of the fourteenth amendment. A state may not evade compliance by modeling its internal organization after a huckster's shell game, so that no matter which entity the plaintiff sues, the state (or its subdivisions) always may reply that someone else is responsible--and that power has been divided in such a fashion that the responsible person can't pay, and the entity that can pay isn't responsible for doing so. We are confident that the State of Illinois would not do such a thing, and that its statutes and other institutional arrangements leave some means of producing an enforceable judgment. But LaSalle County says otherwise, that it is never obliged to pay an official-capacity judgment growing out of a sheriff's wrongdoing, and our tour through state law has not produced a clear answer to the County's argument.

Under these circumstances it is best, we believe, to ask the Supreme Court of Illinois to tell us when and how a county

must pay an official-capacity judgment entered against a sheriff. None of the options we have canvassed yields a ready answer, and there may be additional possibilities that, lacking expertise in Illinois law, we have overlooked. We could guess or improvise, but the question is bound to recur, and only the state courts can supply an authoritative answer. Resolution by the Supreme Court of Illinois would be far superior to federal court's effort to fix the relations between sheriffs and counties under state law; and the Supreme Court of Illinois has the authority, which we lack, to interpret state law so as to ensure compliance with the state's obligations under Fitzpatrick. In another recent case, Yang v. Chicago, 198 F.3d 630 (7th Cir. 1999), we certified to the Supreme Court of Illinois another unsettled question under the Tort Immunity Act--a question that, like the one presented here, seems to arise often in federal cases but rarely in state cases, and that therefore has eluded resolution by the state courts--and the Supreme Court of Illinois accepted the certification and provided a clear answer. See Yang v. Chicago, 2001 Ill. Lexis 191 (Feb. 16, 2001). Certification of the further issues raised by this case will present that court with several of the difficulties that remain after its very helpful decision in Yang and continue the spirit of cooperative federalism evinced in that case.

Circuit Rule 52 provides that "when the rules of the highest court of a state provide for certification to that court by a federal court of questions arising under the laws of that state which will control the outcome of a case pending in the federal court, this court, sua sponte or on motion of a party, may certify such a question to the state court in accordance with the rules of that court, and may stay the case in this court to await the state court's decision of the question certified." Certification to the Supreme Court of Illinois is proper when "there are involved in any proceeding before [the Seventh Circuit] questions as to the law of this State, which may be determinative of the said cause, and there are no controlling precedents in the decisions of this court". Ill. Sup. Ct. R. 20. We therefore respectfully ask the Supreme Court of Illinois to answer

the question whether, and if so when, Illinois law requires counties to pay judgments entered against a sheriff's office in an official capacity. If that court believes that the answer depends on whether the case was settled as opposed to litigated, we would welcome treatment of that distinction as well.

The Clerk of this Court will transmit the briefs and appendices in this case, together with this opinion, to the Supreme Court of Illinois. On the request of that Court, the Clerk will transmit all or any part of the record as that Court so desires.