In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 13-3553 & 14-1371

ROBERT L. WINSTON,

*Plaintiff-Appellee,*

*v.*

OFFICER O'BRIEN, et al.,

*Defendants,*

APPEAL OF:  CITY OF CHICAGO.

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:10-cv-08218 —**Elaine E. Bucklo**, *Judge*.

ARGUED OCTOBER 3, 2014 — DECIDED NOVEMBER 7, 2014

Before POSNER, ROVNER, and TINDER, *Circuit Judges*.

TINDER, *Circuit Judge*. The City of Chicago appeals the district court's decision to hold it responsible for attorney's fees assessed under 42 U.S.C. § 1988 against one of its officers, Matthew O'Brien. The district court concluded that the City was liable for the fees under § 9-102 of Illinois's Local

Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/9-102.

## I.    BACKGROUND

In 2010, Winston sued Officer O'Brien under 42 U.S.C. § 1983, alleging that O'Brien and Officer Nicholas Yates used excessive force while detaining Winston at a Chicago police station. According to Winston, O'Brien tasered him repeatedly and punched him while he was in handcuffs. When the case went to trial, attorneys recruited to represent Winston asked the jury to award $10,000 in compensatory damages against each officer and an unspecified amount of punitive damages. The jury found in favor of Yates, but determined that O'Brien was liable for $1 in compensatory damages and $7,500 in punitive damages.

Winston then petitioned for $336,918 in attorney's fees under § 1988. In response, Officer O'Brien argued that Winston could not recover fees because the compensatory damages awarded were de minimis. But the district court rejected that argument, explaining that Winston's "victory was real, not Pyrrhic," because the jury awarded him "sizable punitive damages against Officer O'Brien, whose actions were the primary focus of plaintiff's case." The court further determined that Winston's attorneys could recover fees for all their requested hours but sought too high of an hourly rate. The court granted a reduced fee award of $187,467.

Seeking to collect on this award, Winston filed a "petition for indemnification and motion for writ of execution against the City of Chicago." In the petition, Winston asked the district court to order the City to pay the fee award or indemnify Officer O'Brien for the fees. Winston argued that the City

was required to pay for fees under state law, which provides:

> A local public entity is empowered and directed to pay any tort judgment or settlement for compensatory damages (and may pay any associated attorney's fees and costs) for which it or an employee while acting within the scope of his employment is liable in the manner provided in this Article.

745 ILCS 10/9-102.

Additionally, Winston contended that the City's collective bargaining agreement ("CBA") with its police officers required indemnification. Article 22 of that agreement addresses indemnification, and under sections 22.1 and 22.4, the City "shall be responsible for, hold officers harmless from and pay for damages or monies which may be adjudged, assessed, or otherwise levied against any officer cover by this Agreement," so long as the officer was acting within the scope of his or her employment and cooperated with the City's defense. Section 22.5 allows for expedited arbitration of grievances alleging violations of Article 22.

In response to Winston's petition, the City noted that § 9-102 states only that municipalities "may pay" attorney's fees and that those fees must be "associated" with an award of compensatory damages. The City argued that the fees at issue are not adequately associated with compensatory (versus punitive) damages to require indemnification and that § 9-102 makes indemnification discretionary rather than mandatory. The City also contended that Winston had no

standing to enforce the CBA and that the court should re-
frain from determining whether the CBA applied.

The district court sided with Winston. The court first re-
jected the City's argument that the fees were not associated
with an award of compensatory damages, explaining that
there was "no clear divide between the legal work per-
formed in support of Winston's claim for compensatory
damages and the legal work performed in support of his
claim for punitive damages." The court then reasoned, quot-
ing *Lally v. City of Chicago*, No. 10 C 5011, 2013 WL 1984422,
at *11 (N.D. Ill. May 13, 2013), that the City's "'liability for
attorneys' fees comes from its responsibility for the compen-
satory damages awarded.'" The court also observed that the
City did not deny that it "was at the helm of defendant's de-
fense" and "made key strategic decisions that increased
Winston's legal fees." For that reason, the court concluded,
"it would be unfair to pass the cost of the City's litigation
strategy on to [Winston], who may have little chance of re-
covering from defendant the fees to which he is entitled un-
der § 1988." The court did not address the City's argument
about the discretionary nature of the attorney-fee language
in § 9-102 or rely on the indemnification provisions in the
CBA.

The next day, the Chicago Police Department issued a re-
sponse to a grievance that the police union had filed on Of-
ficer O'Brien's behalf seeking indemnification for compensa-
tory and punitive damages under Article 22 of the CBA. In
the response, O'Brien's immediate supervisor and an acting
commander agreed that his grievance could not be resolved
at their level of review. A month later, a police commander
explained in a letter to the union's grievance representative

that "[t]he City will pay for the compensatory damages awarded to plaintiff, along with the related attorneys' fees in compliance with 745 ILCS 10/9-102." The commander added, however, that the City would not pay for punitive damages. There is no indication that O'Brien or the police union has ever sought arbitration as permitted by the CBA.

After the City appealed the initial indemnification order, the district court granted Winston's request for an additional $90,777 in supplemental attorney's fees incurred after Winston initially petitioned for fees. In doing so, the court again rejected the City's argument that it should not be held responsible for the fees because it was not a party when the court first granted Winston's request for fees. The court noted that "the City does not dispute that it controlled defendants' litigation strategy." The City appealed this decision in addition to the earlier indemnification decision, and we consolidated our review of the two orders.

## II.    DISCUSSION

On appeal, the City contends that the district court lacked authority to hold it responsible for the attorney's fees assessed against Officer O'Brien. The City maintains that the court's orders went beyond what is authorized under either § 1988 or § 9-102.

Winston does not contend that § 1988 authorizes indemnification by its own terms. Generally, "[t]hat a plaintiff has prevailed against one party does not entitle him to fees from another party, let alone from a nonparty." *Kentucky v. Graham*, 473 U.S. 159, 168 (1985). For that reason, the Supreme Court has held that success in civil-rights litigation against individual government officials does not necessarily entitle a

plaintiff to fees from a governmental entity. *Id.* We have acknowledged, however, that a state indemnification statute might permit recovery of fees independent of § 1988. *See Richardson v. City of Chicago*, 740 F.3d 1099, 1102 (7th Cir. 2014); *Graham v. Sauk Prairie Police Comm'n*, 915 F.2d 1085, 1108 (7th Cir. 1990).

We also agree with the City that § 9-102 does not mandate indemnification of attorney's fees. Under Illinois law, "[t]he primary goal of statutory construction is to ascertain and give effect to the intent of the legislature," and "[t]he most reliable indicator of legislative intent is the language of the statute, which is to be given its plain, ordinary and popularly understood meaning." *In re Detention of Powell*, 839 N.E.2d 1008, 1015 (Ill. 2005); *see United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 11 (2008) (recognizing the presumption that plain language expresses legislative intent). Section 9-102 "direct[s]" municipalities to pay compensatory damages against employees acting within the scope of their employment, but adds that municipalities "*may* pay any associated attorney's fees and costs" (emphasis added). There is no dispute that "[t]he word 'may' customarily connotes discretion." *Jama v. Immigration & Customs Enforcement*, 543 U.S. 335, 346 (2005); *see Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994). Winston asserts that we should consider that the City did not appeal an earlier ruling holding it responsible for fees under § 9-102. *See Lally*, 2013 WL 1984422, at *11. But that argument is meritless. Winston cites no precedent suggesting that the City's decision not to appeal an earlier adverse ruling should overcome the plain meaning of § 9-102.

Winston also argues that the City's reading of § 9-102 is unfair because it would deprive plaintiffs' attorneys of full compensation when they prevail against judgment-proof defendants. Winston points to our analysis in *Graham*, 915 F.2d at 1108, which upheld a district court's decision to require, based on a Wisconsin indemnity statute, that a municipality indemnify attorney's fees assessed against one of its police officers. The plaintiff in *Graham* could not recover absent indemnification, we explained, and thus requiring indemnification of fees served "§ 1988's purpose of ensuring effective access to the judicial process for persons with civil rights grievances" and "the indemnity statute's policy of protecting a public employee from personal financial loss because of a judgment resulting from an act committed within the scope of employment." *Id.*

But these policy concerns do not undermine our interpretation of § 9-102. In *Graham*, the Wisconsin indemnity statute dictated that municipalities "shall" pay the "damages and costs" of employees, and the parties did not dispute that "costs" included attorney's fees. 915 F.2d at 1107–08. Section 9-102, in contrast, includes no requirement to pay "costs," or anything beyond "any tort judgment or settlement for compensatory damages." Moreover, the Illinois Supreme Court rejected arguments similar to Winston's when it refused to construe the term "compensatory damages" in an earlier version of § 9-102, which was silent about fees, as including attorney's fees. *Yang v. City of Chicago*, 745 N.E.2d 541, 547 (Ill. 2001). The court in *Yang* reasoned that the legislative purposes of § 9-102 and § 1988 did not justify extending § 9-102 beyond its plain language. The policy arguments rejected in *Yang* are no more persuasive as a reason to abandon a plain reading of § 9-102 now that the statute has been

amended to clarify that municipalities "may" indemnify fees when they so choose.

Winston next argues that, even if § 9-102 gives the City discretion to choose to indemnify fees, the City "made this choice in advance" by agreeing in the CBA to pay "damages or monies" assessed against its officers. He clarifies that he is not asking us to enforce the CBA but to interpret § 9-102 by taking the CBA into account.

As the City emphasizes, by resorting to the CBA as an aid for interpreting § 9-102, Winston wades into the knotty subject of federal preemption of state law in the area of labor relations. Generally, a state cause of action is preempted under § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a), if success of the claim depends on interpretation of a CBA, though the state claim is *not* preempted if it can be resolved without interpreting the CBA. *See Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 413 (1988); *Crosby v. Cooper B-Line, Inc.*, 725 F.3d 795, 800–01 (7th Cir. 2012); *In re Bentz Metal Prods. Co.*, 253 F.3d 283, 285 (7th Cir. 2001) (en banc). Under that standard, Winston emphasizes, courts may consider the terms of a CBA when addressing a state claim if a "particular contractual provision is so clear as to preclude all possible dispute over its meaning" or "the parties do not dispute the interpretation of the relevant CBA provisions." *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 758 (7th Cir. 2008) (citations and quotations omitted); *see Baker v. Kingsley*, 387 F.3d 649, 657 (7th Cir. 2004).

Here, however, the terms of the CBA *are* subject to dispute. Article 22 of the CBA never explicitly mentions attorney's fees. At first glance, the phrase "damages or monies" in Section 22.1 could be read as covering fees. But that

phrase also could be read as covering punitive damages, and as the City notes, indemnification of punitive damages is prohibited under Illinois law. *See* 745 ILCS 10/2-302. This conflict suggests that the CBA should not be given its broadest possible reading. For our purposes, it is enough to say that, regardless of which party has the better argument, the dispute about the CBA's interpretation cautions against relying on it to interpret § 9-102.

More importantly, regardless of preemption or interpretation of the CBA, we are not convinced that the CBA somehow modifies the plain language of § 9-102. As Winston acknowledges, he asks for indemnification solely under § 9-102, not the CBA, which has its own procedures for determining an employee's entitlement to indemnification. The CBA's indemnification provisions never cite § 9-102 nor give any hint that they are intended to implement § 9-102. Winston has not persuaded us that the CBA transforms § 9-102 from a rule that municipalities "may pay" attorney's fees to one requiring that they "must" or "shall" pay fees.

Winston also contends that the City conceded that the CBA covers attorney's fees in the police commander's letter agreeing to pay fees "in compliance with" § 9-102. As with the CBA, however, the City disputes Winston's reading of the letter, arguing that it amounts to nothing more than a boilerplate acknowledgment that the City will abide by state law. Further, no matter the meaning of the letter, like the CBA, the letter itself does not change the meaning of § 9-102.

Moreover, the letter underscores a possible danger of Winston's approach. That the letter was issued *after* Winston moved for indemnification suggests that the district court risked short-circuiting the grievance process if it had inter-

preted the CBA before Winston received a response. Even now, it remains unclear whether the police union has exhausted its remedies under the CBA. The Supreme Court has cautioned that "'[a] rule that permitted an individual to sidestep available grievance procedures would cause arbitration to lose most of its effectiveness, … as well as eviscerate a central tenet of federal labor contract law under § 301 that it is the arbitrator, not the court, who has the responsibility to interpret the labor contract in the first instance.'" *Lingle*, 486 U.S. at 411 (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985)). This admonition further supports rejecting Winston's request that we base our interpretation of § 9-102 on the CBA or the commander's letter.

In sum, the plain language of § 9-102 gives the City discretion in deciding to indemnify attorney's fees associated with an award of compensatory damages, and the CBA with the police union does not convert § 9-102 into a mandate to pay fees. We thus conclude that the district court erred in ordering the City to indemnify Officer O'Brien's attorney's fees, and the two orders related to indemnification, to the extent that they hold the City responsible for attorney's fees, are REVERSED.