In the
United States Court of Appeals
For the Seventh Circuit

No. 99-2102

ROGENE GORENCE, JAN WOLF,
and CARY BRUCE,

Plaintiffs-Appellants,

v.

EAGLE FOOD CENTERS, INCORPORATED,
a Delaware corporation,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 93 C 4862--Blanche M. Manning, Judge.

Argued January 17, 2001--Decided March 8, 2001

 Before EASTERBROOK, EVANS, and WILLIAMS, Circuit
Judges.

 EVANS, Circuit Judge.  Three employees of the
Eagle Food Center, having a boatload of
complaints against Eagle, have brought a hodge-
podge of unrelated employment discrimination
claims which the district judge dismissed on
summary judgment in three separate, lengthy
decisions of 28, 33, and 40 pages. Upon
reconsideration, the judge once again found that
the cases should be dismissed. The unhappy
employees appeal.

 Cary Bruce was hired as a store clerk in 1958
and eventually became the manager of several
different stores. In 1990, when he was 47, he was
made a district manager, in charge of 17 suburban
Chicago stores. In June 1990 new personnel
arriving on the scene demoted him. He was
replaced by a 56-year-old man. Bruce became the
manager of a store in Libertyville, Illinois.

 In 1991 one of the district managers resigned.
Bruce applied for the position but did not get
that one or other positions he applied for.
Instead, he was transferred from Libertyville to
a store in Round Lake Beach and then in 1993 to
a store in Belvidere. In January 1996 he was
suspended from the Belvidere position because,
according to Eagle, he had an inappropriate
personal relationship with the wife of another
employee. After his reinstatement, Bruce was

transferred to a store in McHenry, Illinois. He claims that Eagle discriminated against him because of his age and in retaliation for his filing a charge of discrimination.

Jan Wolf began working for Eagle as a cashier in April 1976. She was promoted to personnel specialist at corporate headquarters in December 1985. In December 1987 she was promoted to training manager, but at a lower salary than the person she replaced. Wolf did not get promotions she sought for positions as an industrial engineering manager or a director of human resources. After a reorganization in 1995, Wolf became a human resources specialist. Her claims are that the company engaged in sex discrimination and violated the Equal Pay Act.

Rogene Gorence began working for Eagle as a cashier in March 1965. In 1973 she became a personnel specialist at corporate headquarters. In 1975 Eagle expanded her duties to include interpreting and administering labor agreements and processing union grievances, but she did not like negotiating and, in fact, has not negotiated a labor contract since 1984. Eagle hired two lawyers to negotiate, arbitrate, and handle labor and employment matters. Gorence was paid less than one of the attorneys, and she contends this is gender discrimination.

In 1991 Gorence applied to be an assistant warehouse manager; she was not hired. Then in 1992 she applied to be human resources manager, another position she did not get. She became Eagle's labor relations manager in 1993, but her position was eliminated in 1995, and she, like Wolf, became a human resources specialist. Her allegations include sex and age discrimination.

The plaintiffs' primary gripe on this appeal is that their claims were analyzed under the framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), that is, by employing an indirect method of proof, when they should have been analyzed under the direct method of proof. They claim that the McDonnell Douglas formula puts too heavy a burden on them. However, in what might be an abundance of caution, the three plaintiffs also contend that they survive summary judgment under McDonnell Douglas.

In Troupe v. May Department Stores, 20 F.3d 734 (7th Cir. 1994), we said that under the direct method of proof a plaintiff must show either an acknowledgment of discriminatory intent by the defendant or circumstantial evidence that provides the basis for an inference of intentional discrimination. That evidence can be (1) suspicious timing, ambiguous statements,

etc., (2) evidence that similarly situated employees were treated differently, or (3) evidence that the employee was qualified and passed over for the job and the employer's reason for the difference in treatment is a pretext for discrimination. In Huff v. Uarco, 122 F.3d 374 (1997), we noted that the third type of circumstantial evidence in a direct case is substantially the same as the evidence required under McDonnell Douglas.

 No application of law to facts, however, is ever quite so simple as setting out principles of law. After over three and a half decades of laws prohibiting employment discrimination in one form or another, employers are fairly unlikely to be caught making statements such as, "I fired Judy because she was an old woman." Workplaces remain, though, places filled with persons who express thoughts which often reveal bias or ignorance. Those persons can be caught saying, for example, something like, "Old women are hard to deal with." The first statement proves intentional discrimination; the second, without more, does not. Inevitably, in cases we see, we deal with what falls in between.

 The second hypothetical statement we just used might be bigoted. But we have said that bigotry, per se, is not actionable. It is actionable only if it results in injury to a plaintiff; there must be a real link between the bigotry and an adverse employment action. Miller v. American Family Mut. Ins. Co., 203 F.3d 997 (7th Cir. 2000). The comment would more than likely be what we label a "stray" remark--a remark which fails to show discrimination unless it is related to the employment decision. Cianci v. Pettibone Corp., 152 F.3d 723 (7th Cir. 1998); Fuka v. Thomson Consumer Elec., 82 F.3d 1397 (7th Cir. 1996). We cautioned in Hunt v. City of Markham, Ill., 219 F.3d 649 (7th Cir. 2000), that our cases should not be overread to mean that "stray remarks" of a derogatory character are never evidence of discrimination. What our cases hold, we said, is that if someone not involved in the decisionmaking in a plaintiff's case expressed discriminatory feelings, that is not evidence that the decision was discriminatory. It is different, we said,

when the decision makers themselves, or those who provide input into the decision, express such feelings (1) around the time of, and (2) in reference to, the adverse employment action complained of.

At 652. It might be, in fact, that remarks meeting these criteria are not "stray" at all. Finally, evidence of inappropriate remarks not

shown to be directly related to the employment decision may not support a direct-method-of-proof case, but, in connection with other evidence, might support a case under McDonnell Douglas.

Another principle could emerge from this particular case; that is, that an amorphous litany of complaints about a myriad of workplace decisions regarding promotions, salary, etc. does not necessarily meet a plaintiff's burden of proof. In this case, we have been buried in details about employment decisions, some of which are, and some of which are not, really involved in this case. For instance, Bruce's 1990 demotion is now admitted to be outside the time limits for this action. Nevertheless, it occupies pages and pages in this record. Little has been done, particularly by the three plaintiffs, to make slogging through the record here either more efficient or more pleasant. And it is simply not true, we want to emphasize, that if a litigant presents an overload of irrelevant or nonprobative facts, somehow the irrelevancies will add up to relevant evidence of discriminatory intent. They do not; zero plus zero is zero.

To bring some order to the chaos we find in this record, we tether our analysis to the claims set out in the second amended complaint and the charges of discrimination filed with the Equal Employment Opportunity Commission. Particularly in employment discrimination cases, we cannot range far and wide looking for any bad acts ever committed by an employer and then conclude that because the employer is bad, it must have discriminated against a particular plaintiff. Title VII, the ADEA, and other discrimination statutes require more focus than that. They require that a plaintiff's claims first be presented to the agency. 29 U.S.C. sec. 626(d); 42 U.S.C. sec. 2000e-5(f). Although we read charges of discrimination liberally in order to allow a claim of discrimination that is reasonably related to the allegations in the charge, it is the claims presented to the agency and claims reasonably related to those in the charge which form the basis for a federal court lawsuit. Bielfeldt v. Commissioner, 231 F.3d 1035 (7th Cir. 2000). In turn, a federal court complaint needs to give notice of what the claims are. Cheek v. Peabody Coal Co., 97 F.3d 200 (7th Cir. 1996). As an aside, we also note that although we have managed to find in the record all but one of the administrative charges filed by these plaintiffs, finding them has not been very easy.

Gorence's charge before the EEOC, filed May 26, 1992, stated that she did not receive the title

of manager in 1992 (manager of what she doesn't say) and that she was denied promotion to warehouse and distribution center manager in August 1991. She also claimed she was retaliated against and that males were treated more favorably. In her second amended complaint in the district court, Gorence states claims under the Age Discrimination in Employment Act, 29 U.S.C. sec. 621 et seq., and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. sec. 2000e et seq. In count I she contends that she was denied a promotion (in 1991) to the position of assistant warehouse and distribution center manager, and a less qualified, younger male got the spot. The complaint also states:

15. From July 1, 1973 through the present, Plaintiff GORENCE has been denied and continues to be denied promotions and compensation because of her age and sex.

16. From July 1973 through March 1993, Plaintiff GORENCE was involved in training Defendant's personnel managers while holding the title of Personnel Specialist. She was denied promotions to the manager level based on her age and sex.

Apparently these allegations, coupled with the EEOC charge of discrimination, are somehow supposed to provide notice that she was denied two other promotions: to industrial relations manager in 1992 and to labor relations director in 1993. Perhaps the denial of promotion to industrial relations manager is the one she refers to cryptically in her charge before the EEOC. It is hard, however, to find a sufficient relationship between the claims in the charge before the agency and the denial of a promotion to director of labor relations, which she claims she was denied in 1993. Also, it is hardly worth noting that any claim dating back to 1973 is too stale to recognize.

In her complaint, Gorence also alleges that she was paid less than male employees with titles similar to hers as labor relations manager. And in count II she claims that Eagle retaliated against her by changing her title from labor relations manager to that of human resources specialist.

Evidence which she says supports a finding of intentional discrimination includes an unfortunate statement that Donan McAuley, a disgruntled former employee, attributed to decisionmaker Doug Edwards. McAuley said that Edwards said that "he didn't want to talk to any middle-aged menopausal women." It is something of a leap to say that this statement means that the

reason Gorence was not hired as warehouse manager was that she was a middle-aged woman. Even if he did not want to talk to middle-aged women, Edwards did, in fact, interview Gorence. He did not hire her because his view was that her qualifications did not meet those required for the assistant warehouse manager.

Other evidence on which all the plaintiffs rely to support an inference of discriminatory employment practices includes their largely unsupported claim that Eagle was willing to promote young men to management positions even though they did not have the requisite experience. Similarly, plaintiffs cite "evidence" of wage disparities along gender-based lines. For instance, the evidence of salary disparities in Gorence's case involves her affidavit in which she says that other persons, all male, who were "specialists" as she was were "compensated at a much higher level" than she was. She lists ten such persons. Then as support for her statement, she compares her salary with two of the males whose salaries are higher. In a vacuum, without information regarding duties, experience, etc., the comparisons are not evidence of intentional discrimination.

Gorence offers, as well, her claim that the qualifications for assistant warehouse manager were changed when she applied for the position; whereas in the past it had been a position for a person with human resources experience, the qualifications were changed to require warehouse experience, which Gorence did not have. Eagle says that the new warehouse manager needed an assistant with warehouse experience. We are not convinced that a requirement that an assistant warehouse manager have warehouse experience shows discriminatory intent, even if the job description had recently been changed.

In addition to our uncertainty as to whether these claims are actually in the lawsuit, Gorence's claims regarding promotion to industrial relations manager and labor relations director fail as well because, at the time she applied for the positions, they did not exist, and no one was ever placed into those positions.

Gorence's claim that she was discriminated against because McAuley was paid more than she was also fails. McAuley had a different educational background--he had a law degree and she did not. He also performed different duties, including arbitrations and labor negotiations, and she did not. On this record, we cannot find discrimination.

Finally, Gorence claims that she was retaliated

against because her title was changed from labor relations manager to human resources specialist. This change in title did not, however, result in a loss of pay or benefits. Gorence has not shown by the direct method of proof that Eagle acted with discriminatory intent.

Turning to a McDonnell Douglas analysis of Gorence's Title VII claims, we find that she cannot show she was qualified for the positions or that the legitimate, nondiscriminatory reasons given for the employment action are pretextual. Under McDonnell Douglas she, as well as Wolf, must establish a prima facie case of discrimination, after which Eagle must offer legitimate, nondiscriminatory reasons for the employment action. She must then rebut the employer's legitimate reason by proving that it is a pretext for discrimination. A prima facie case requires her to show that she is a member of a protected class, has applied for and was qualified for an open position, was rejected, and the position was filled with a person not in the protected class or remained open. Mills v. Health Care Serv. Corp., 171 F.3d 450 (7th Cir. 1999). The McDonnell Douglas analysis is also applicable to ADEA claims. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 120 S. Ct. 2097 (2000). Obviously, the prima facie case necessarily involves age-related factors: she and also Bruce must establish that they are in the protected age group and that substantially younger persons obtained the positions they wanted. Paluck v. Gooding Rubber Co., 221 F.3d 1003 (7th Cir. 2000). For a retaliation claim, the prima facie case includes three elements: that the plaintiff engaged in protected activity; that she suffered an adverse job action; and that there is a causal link between the protected activity and the adverse job action. Miller v. American Family Mut. Ins. Co., 203 F.3d 997 (7th Cir. 2000). Then the employer must present a legitimate, nondiscriminatory reason for its action and the plaintiff must establish pretext.

Under the McDonnell Douglas framework, Eagle claims that Gorence simply was not qualified for the job as warehouse assistant manager. What the qualifications for a position are, even if those qualifications change, is a business decision, one courts should not interfere with. Dale v. Chicago Tribune Co., 797 F.2d 458 (7th Cir. 1986). We do not tell employers what the requirements for a job must be. Given the qualifications which Eagle set out for the position, Gorence simply did not measure up. All in all, her claims were properly dismissed.

Next we turn to Wolf's claims. She alleges in the amended complaint that on March 30, 1992, she

was denied a promotion to the position of director of human resources. She also alleges in general that after taking a psychological test to determine her management ability, she "did not receive a promotion as a result of submitting to that test despite her high marks thereon." The complaint is unclear exactly what promotion that would be; however, her second of three charges before the EEOC refers to a position as industrial engineering manager. This case has been litigated as to that position as well as her claim that a position as the director of training management should have been created for her in 1992. The latter may or may not be encompassed within the EEOC charges./1 Wolf also claims that she was retaliated against for filing EEOC charges by suffering cutbacks in her staff, by the denial of promotions, and by a job change from training manager to human resources specialist. Wolf also asserted a claim of unequal pay under the Equal Pay Act and Title VII, but she now concedes that those claims are untimely.

Wolf does not present evidence to support her promotion claims under the direct method of proving intentional discrimination. Her claims were properly analyzed under McDonnell Douglas. Using that mode of analysis, we find that Wolf fails to show that she was qualified for the position of human resources director in 1992. She had never negotiated a collective bargaining agreement and her experience in such a position was not comparable to that of the person ultimately hired, Bill Crigger. In fact, Wolf admitted that she did not have the experience that Crigger had. The same facts go to whether Eagle had a legitimate, nondiscriminatory reason for preferring Crigger over Wolf. He had worked for another company where he was a human resource manager for one division and a training coordinator and personnel manager for another division. Other than generalized claims that Eagle did not have females in higher level positions, there is nothing to show that Eagle's preference for Crigger in this situation was a pretext for discrimination.

Wolf's other promotion claims fail as well. The position of industrial engineering manager went to a person who had been working for the consulting firm which handled the responsibilities of the position for 10 months. That Eagle chose to hire that person to continue the work he had been doing is a legitimate, nondiscriminatory reason for not promoting Wolf. Again, Wolf has presented no evidence of pretext. The other position--that of director of training development--was never created. Therefore, if there is a claim in this lawsuit that Wolf should have been given the position, it fails.

Some of Wolf's retaliation claims could hardly be said to rise to the level of adverse job actions with which a federal court should be concerned--loss of secretarial support, for instance. Even the change in title from human relations manager to human relations specialist did not involve a loss of pay or benefits. Such a change does not constitute an adverse job action. See Ribando v. United Airlines, 200 F.3d 507 (7th Cir. 1999).

Cary Bruce's claims are for age discrimination and retaliation. In the amended complaint he claims that he was demoted from a position as district manager and then later was not promoted to other district manager positions; rather, younger less qualified males were selected. He acknowledges that his claim that he was demoted in 1990 is barred because his EEOC charge was filed more than 300 days after the demotion--on August 5, 1992. See Lever v. Northwestern Univ., 979 F.2d 552 (7th Cir. 1992). That leaves Bruce with claims that he should have been promoted in 1991 and 1992 and that he was retaliated against after he filed his charge by being suspended and transferred to less desirable locations.

Bruce's evidence of intentional discrimination through the direct method of proof includes statements made by certain Eagle officials. The problem with all of the statements is that they are not sufficiently connected with any decision regarding Bruce. In 1993 one official asked for a protocol to get rid of older store managers. The statement having been made a year after any relevant employment decision, it is not sufficiently connected to Bruce's claims. Similarly, McAuley said that Steve Bryan commented in 1990 that Bruce was not one of the younger managers that Bryan "wanted to put in place." A problem with this statement is that Bryan did not begin to work for Eagle until 1991. It also is not connected with any particular employment decision. Finally, Bruce claims that Bryan often used terms "young and aggressive" when referring to managers. Again there is no connection to a decision regarding Bruce.

Looking at Bruce's claims through the prism of McDonnell Douglas, we also find that Eagle's contention that Bruce was not qualified and that it had legitimate, nondiscriminatory reasons for not promoting him is supported in the record. In 1991 and 1992 Eagle wanted to change the non-innovative culture which had prevailed at the company. Eagle wanted district managers who did well at problem identification and problem solving. The company wanted effective leaders who were good communicators and motivators and who

had flexible management styles. Eagle considered Bruce deficient in these categories. Bruce was seen as someone who allowed outdated merchandise in his store, who had problems with store conditions and cleanliness, and who was the target of a number of employee grievances. The company questioned his leadership style and general performance. Bruce has not shown that these concerns were a pretext for discrimination on the basis of age.

Bruce's retaliation claims involve transfers to different stores and a suspension without pay. The suspension was a result of his having an affair with an employee's wife. There is no evidence that the reason was pretextual. The transfers did not constitute an adverse employment action; he retained the same pay and benefits.

As to all three plaintiffs, the judgment of the district court is

AFFIRMED.

FOOTNOTE

/1 Looking in the record in places where such things would reasonably be expected to appear, we have found only two of the three charges Wolf apparently filed with the EEOC.