Anna M. HALL, Plaintiff–Appellant,

v.

CITY OF CHICAGO, Defendant–
Appellee.

No. 01–2036.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 15, 2002.

Decided Nov. 20, 2002.

Before FLAUM, COFFEY, and EASTERBROOK, Circuit Judges.

## ORDER

Anna M. Hall, a licensed plumber, claims that the City of Chicago's ("City's") repeated failure to promote her constitutes unlawful discrimination based on her gender. On July 29, 1998, Hall filed a *pro se* complaint of discrimination in district court, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* After obtaining legal counsel, Hall twice amended her complaint to allege, *inter alia,* that the City discriminated against her based on her gender and retaliated against her for complaining of environmental hazards in the workplace. The district court granted the City summary judgment on each of Hall's claims, holding that Hall had failed to rebut the City's legitimate reasons for not promoting her, and that Hall had failed to establish a *prima facie* case of retaliation under Title VII. We affirm.

## I. Factual Background

On August 16, 1995, the City hired Hall to work as a plumber with the Department of Water ("Water Department"). By that time, Hall had completed a plumber's apprenticeship and was certified as a licensed plumber. For three years, from 1996 to 1999, Hall was the only female plumber in the South District of the Water Department, where she was employed. As of March 2000, she was one of only four female employees in the entire Department.

The Water Department is comprised of four district offices, each of which has a general superintendent, a district superin-tendent, and an assistant district superin-tendent. Hall's district, the South District, also employs four "district foremen" who supervise a number of regular foremen. Each regular foreman supervises between one and three work crews. The work crews, made up of plumbers and caulkers,[1] are supervised by the "plumbers or caulkers in charge." The Water Department also employs "plumbing inspec-tors" to inspect the work of its plumbing crews.

When a regular foreman, district fore-man, plumber in charge, or plumbing in-spector position becomes vacant, the Wa-ter Department's Personnel office posts a vacancy announcement for a fourteen-day period during which it accepts applications from prospective candidates. The Person-nel Office then sends a "request for hire" to the Office of Budget Management ("OMB") to secure continued funding for the position. If the request for hire is ultimately granted by the OMB, the Per-sonnel Office schedules interviews with those applicants who meet the basic crite-ria for the job. If OMB denies the hiring request, the Personnel Office sends each applicant a letter informing her that the position will not be filled that year.

Candidates are interviewed for the vari-ous positions by one or more supervisors within the Water Department. Each in-terviewer receives a packet containing the candidate's bid application form (with in-formation on the candidate's education, relevant experience, and other background facts), a set of "hiring rating forms," and a copy of the Water Department's "Inter-viewer Guidelines." During the interview, the interviewers rate each candidate, on a scale of "1 to 5," in a number of different areas, including, *inter alia,* training, expe-

---

1. A caulker is a person who has not yet been "certified" as a plumber, but who nonetheless does the work of a plumber.

rience, written communication skills, and oral communication skills. Each interviewer arrives at an overall interview score for each candidate, using a standard weighted-average formula. The candidates are then ranked, from the highest to the lowest, according to their composite interview scores. The Water Department's Commissioner, who makes the hiring decisions, generally hires the candidate with the highest overall interview score. Seniority may be taken into account if there is a tie between two or more candidates.

The hiring process employed by the City's Department of Buildings ("Buildings Department") is similar to the process used in the Water Department. The Buildings Department posts vacancy notices for two weeks, accepts applications during that time, and schedules interviews with those candidates who meet the basic requirements for the job. Qualified candidates are interviewed by a panel of two or more interviewers, and each interviewer assigns each candidate an overall interview score based on a "1 to 5" scale. The Commissioner of the Buildings Department also generally hires the candidate with the highest overall interview score.

Since she was hired by the City in August of 1995, Hall has applied for a promotion on at least fourteen occasions. Specifically, she has filed applications to fill vacant regular foreman, district foreman, and plumbing inspector positions. Each time, however, the vacancy has either been closed for lack of funding, or the position has been given to an applicant with a higher overall interview score.

At least four times, in August of 1997 and in February, March and August of 1998, Hall submitted bids for district foreman positions in the Water Department. Three of the district foreman positions were canceled for lack of funding, however. With respect to the fourth position, Hall received an overall interview score of "2," while the successful candidate scored an overall rating of "5."

Hall also submitted applications for regular foreman positions in the Water Department in January and August of 1998. The January 1998 position was closed for funding reasons, and the August 1998 vacancies were filled by candidates with higher interview scores. While Hall received an overall interview score of 3.2, those hired all received scores of 4.6 or higher.

Finally, Hall applied at least nine times to fill plumbing inspector vacancies, both in the Water Department and in the Buildings Department. Five of the plumbing inspector vacancies were withdrawn for funding reasons. As to the positions that were filled, Hall again scored lower in each case than the male candidate who was ultimately hired. In one of Hall's unsuccessful plumbing inspector interviews, her interviewer noted that she was "well below average in knowledge as well as communication skills."

## II. Procedural Background

Hall filed the instant action on July 29, 1998, within ninety days of receiving a right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC"). In her Second Amended Complaint, Hall alleged that the City violated Title VII by: (1) failing to promote her, (2) failing to notify her of job vacancies, (3) compelling her to work in a contaminated work environment, (4) retaliating against her for reporting such contamination, and (5) failing to discipline a supervisor-employee who had used inappropriate language in reference to her. On March 31, 2000, the City moved for summary judgment, which was granted by the district court on March 29, 2001.

## II. Issues

On appeal, Hall asserts that the district court erred in holding that Hall had failed to present a material issue of fact as to: (1) whether the City's failure to promote Hall was discriminatory; and (2) whether the City retaliated against Hall in violation of Title VII. Hall believes these issues should have gone to a jury, and that summary judgment was improper.

## III. Discussion

### A. Standard of Review

Summary judgment is properly granted if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). " 'Only when we determine that no reasonable factfinder could decide for the nonmoving party is summary judgment appropriate.' " Gleason v. Mesirow Fin., Inc., 118 F.3d 1134, 1139 (7th Cir.1997) (quoting McKenzie v. Illinois Dept. of Transp., 92 F.3d 473, 479 (7th Cir.1996)). In order to successfully defeat a summary judgment motion, therefore, the nonmoving party must raise more than a "metaphysical doubt" as to the material facts. Id. This Court reviews a grant of summary judgment de novo, and in so doing, views all facts in the light most favorable to the nonmoving party. Id.

### B. Hall's Discrimination Claim

Title VII makes unlawful certain workplace discrimination, including an employ-er's "fail[ure] or refus[al] to hire ... any individual ... because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). In all cases, the plaintiff bears the burden of proving discrimination under Title VII. See Grube v. Lau Indus., Inc., 257 F.3d 723, 727 (7th Cir.2001). Where, as here, there is no "direct" proof of gender discrimination, a plaintiff may raise an inference of discrimination by first establishing a prima facie case. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.E.2d 668 (1973).

To make a prima facie case of discriminatory failure to promote, Hall must demonstrate that she is a member of a protected class, has applied for and was qualified for the promotion sought, was nonetheless rejected, and the promotion was given to a person not in the protected class. Gorence v. Eagle Food Centers, Inc., 242 F.3d 759, 764–5 (7th Cir.2001). If Hall succeeds, the burden shifts to the City to present a legitimate, non-discriminatory basis for not promoting her. Paluck v. Gooding Rubber Co., 221 F.3d 1003, 1009 (7th Cir.2000). Hall may rebut the City's proffer, however, by producing "evidence that would, if believed by a trier of fact, show that the true reason for the employment action was discriminatory." Sattar v. Motorola, Inc., 138 F.3d 1164, 1169 (7th Cir.1998) (citations omitted).

■ Before the district court, the City presented evidence that it had denied Hall's applications for promotion on the basis of her deficient interview scores.[2]

---

**2.** The City also, in a number of instances, denied Hall's application for promotion because it had been denied funding for the position for which Hall had applied. Hall presents no evidence that the City's decision to cancel certain job vacancies was discriminatory, however. She does make a bare allegation that, in 1997, although the City withdrew vacancy notices for two plumbing inspector vacancies (prior to conducting interviews), at some point during that year, two men in the Water Department were promoted to plumbing inspector positions. See Hall Br. at 20. However, Hall provides no evidence that the two men were promoted to vacancies for which Hall herself submitted

As noted by the district court, "Plaintiff [had] interviewed [for the promotions] before a number of different panels made up of various supervisors," and yet, "[t]ime and again, [had] received lower scores than her peers." *Hall v. City of Chicago*, 152 F.Supp.2d 962, 970 (N.D.Ill.2001). The City having presented a legitimate, non-discriminatory basis for its failure to promote Hall, the burden then shifted to Hall to present evidence that the City's stated reason for not promoting her was mere pretext. Finding that Hall had failed to meet her burden, the district court granted summary judgment to the City on Hall's discrimination claim.

■ On appeal, Hall maintains that the City's proffered basis for not promoting her, *i.e.*, her low interview scores, was mere pretext and that its true motivation was discriminatory. To succeed, Hall must demonstrate that the City's claimed reliance on the interview scores was a "lie." *Brill v. Lante Corp.*, 119 F.3d 1266, 1269 (7th Cir.1997). If the City honestly believed in its stated basis for not promoting Hall, Hall's discrimination claim will fail even if such justification is "foolish or trivial or even baseless." *Id.*

Hall takes great pains to demonstrate that the City was "lying" when it claimed to have relied on Hall's low interview scores as the basis for its decisions. She argues that her "extensive training, knowledge and experience," as well as her past positive job reviews belie her low interview scores and the City's decisions not to promote her. Hall Br. at 16. Hall also claims that the subjective nature of the interview scores, and the sheer number of times that she was passed over for promotions raise "genuine questions of material facts [sic] regarding pretext." Hall Br. at 16, 18.[3]

Notwithstanding her efforts, Hall has failed to raise a material issue of fact as to whether the City's purported reliance on the interview scores was false. Her claim that the subjective nature of the interview scores implies pretext is legally untenable, given her lack of evidence that the interview criteria and scoring system were a "mask" for discrimination. *See Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1176 (7th Cir.2002) (quoting *Denney v. City of Albany*, 247 F.3d 1172, 1185 (11th Cir.2001)) (" '[a]bsent evidence that subjective hiring criteria were used as a mask for discrimination, the fact that an employer based a hiring or promotion decision on purely

---

an application, or that their promotions bore any relation to the vacancies canceled by the City that year. Hall thus fails to refute the City's statement that it canceled the vacancies because OBM refused to fund such positions, rather than for discriminatory reasons. *See* City's Fact Statement ¶ 39(j).

**3.** Hall takes half-hearted jabs at the interview process itself, arguing that the City: (1) improperly ignores *past* interview performances in the formulation of subsequent interview scores, *see* Hall Br. at 8 (stating that, in one case, a successful applicant had "answered two questions wrong in a *prior* interview," implying that the interviewer somehow erred by ranking him higher than Hall in a subsequent interview), and (2) improperly allows persons who are not plumbers themselves to

interview plumbers seeking promotion in the Department, *see id.* at 8, 10. However, it is entirely reasonable for the City to base its promotion decisions on *current* interview performances (rather than incorporating past performances). So, too, is it reasonable for the City to use department supervisors, even those who may not be certified plumbers, as interviewers, given that many factors *in addition to* an applicant's plumbing knowledge are material to the City's hiring decisions.

Neither of these arguments supports a finding that the City's claimed reliance on the interview scores in its promotional decisions was a "lie," or even that reliance on such scores was misplaced. Accordingly, these arguments fail to raise an issue of material fact as to the issue of pretext.

subjective criteria will rarely, if ever, prove pretext under Title VII . . .' ").

Moreover, Hall's self-serving references to her own "exceptional experience and training" are insufficient to cast doubt on the validity of the interview scores, or the sincerity of City in claiming reliance thereupon. Indeed, the relevant question is *not* what experience, knowledge and skills Hall possesses, as an absolute matter, but whether she was more qualified for the various positions *relative to the successful candidates* who were hired based on their superior interview scores. If Hall had presented evidence that her interview scores were themselves discriminatory, or that they were not based in fact, Hall might have raised a triable issue of fact regarding pretext. *See Collier v. Budd Co.*, 66 F.3d 886, 892 (7th Cir.1995) (requiring that, to raise a material issue of fact regarding pretext, the plaintiff produce evidence that the proffered basis for the employment decision "had no basis in fact," did not in fact motivate the decision, or was "insufficient" to motivate the decision).

Hall has failed to present any evidence that the interview scores she received were inaccurately adjusted downward or that, in spite of her consistently sub-par interview scores, she was in fact more qualified for the positions than the individuals promoted by the City. Instead, Hall repeatedly complains that *the City* "failed to offer any evidence whether [sic] *any* of the successful applicants achieved comparable career successes." *Id.* at 17 (emphasis in original). But the burden of production in this case was on Hall, not the City.

Because Hall failed to present any evidence that the City's articulated reason for not promoting her was pretextual, Hall's discrimination claim fails as a matter of law. Accordingly, the district court correctly granted the City's Motion for Summary Judgment as to Hall's discrimination claim.

## C. Hall's Retaliation Claim

■ Hall urges reversal of the district court on the additional basis that its denial of her retaliation claim was in error. Title VII prohibits employers from "discriminat[ing] against any . . . employee[ ] . . . [on the basis that] [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). Before the district court, Hall alleged that the City had retaliated against her for filing complaints about environmental hazards associated with her work truck. *See* Second Amended Complaint ¶ 11(E). As the district court rightly noted, however, "Title VII was not intended to protect workers from hazardous conditions in the workplace," [District Court Order] at 11. Hall's prior complaints of environmental hazards did not qualify as statutorily-protected expression under Title VII, therefore, and Hall's retaliation claim was properly denied.

■ In an apparent effort to revive her retaliation claim on appeal, Hall now argues that she engaged in expression that *was* protected by Title VII—namely, by complaining of gender discrimination and filing a charge of gender discrimination with the EEOC. It is well-settled, however, that an issue that is not raised before the trial court is waived on appeal. *See Moulton v. Vigo County*, 150 F.3d 801, 803 (7th Cir.1998).

At no point in her complaints, amended or otherwise, did Hall ever allege that the City retaliated against her because she had previously filed discrimination complaints and an EEOC charge. Although

Hall did make such an argument in opposition to the City's summary judgment motion, she failed to amend her complaint to state such allegation. *See Shanahan v. City of Chicago,* 82 F.3d 776, 781 (7th Cir.1996) ("a plaintiff may not amend h[er] complaint through arguments in h[er] brief in opposition to a motion for summary judgment."). Hall therefore waived her claim of retaliation based on her prior discrimination complaints, and we need not consider the merits of such claim on appeal.

The judgment of the district court is AFFIRMED.