**Luther WOODS, Plaintiff–Appellant,**

v.

**PERRY COUNTY, et al., Defendants–Appellees.**

No. 02–3717.

United States Court of Appeals,
Seventh Circuit.

Argued March 5, 2003.

Decided April 16, 2003.

Before MANION, DIANE P. WOOD, and EVANS, Circuit Judges.

ORDER

Luther Woods, an African–American, was terminated from his position as a dep-

uty sheriff of Perry County, Illinois, after Sheriff Keith Kellerman concluded that Woods had violated several departmental rules. Believing that the real reason for the Sheriff's action was race discrimination, Woods decided to challenge it in a lawsuit filed against Sheriff Kellerman, the County, and the Perry County Sheriff's Office in the Southern District of Illinois. The district court dismissed the claims against the county defendants and granted summary judgment to Sheriff Kellerman. Woods appeals, and we affirm.

## I

Woods began his employment as a deputy patrolman in the Perry County Sheriff's Office in 1987 under then-Sheriff Sam Heller. At the time he was hired, Woods received a copy of the Perry County Sheriff's Department Policy and Procedures Manual (the "Manual"), which set forth the rules that deputies are required to follow. Woods admitted that he read and understood the Manual. Woods worked as a patrolman until 1998, when he became a D.A.R.E. (Drug Abuse Resistance Education) officer. Sheriff Heller was replaced after Sheriff Kellerman was elected to that post in December 1998.

During his tenure with the Sheriff's Office, Woods was subjected to numerous disciplinary actions. For example, Sheriff Heller suspended Woods for four days after equipment was stolen from his unlocked patrol car. On another occasion, Sheriff Heller suspended him for one day when he ignored a lieutenant's order to stay away from sheriff's dispatcher Sandra Coleman. Woods also violated department rules after Sheriff Kellerman took over. In August 1999 Woods admitted that he had taken gasoline from the county for his personal use on two or three occasions even though he knew that this type of petty theft violated rules in the Manual.

Sheriff Kellerman issued Woods a written reprimand for his conduct and warned that similar conduct could lead to his termination. In October 1999 a dispatcher accused Woods of having an unauthorized female in his patrol car. Woods denied the allegation, and nothing came of it. Also in October 1999 Sheriff Kellerman spoke with Woods about an allegation that he was speeding in his patrol car, but again the Sheriff let the matter drop. Woods also received a verbal reprimand for "loafing and hanging out" at the Du-Quoin, Illinois, city hall when he should have been working. Woods admitted that Sheriff Kellerman also disciplined white employees from time to time, including issuing verbal warnings and suspensions to some, and terminating (or seeking the resignation of) several others.

In May 2000 Woods, while on duty, drove his friend, Joe Clark, in his patrol car to a restaurant for lunch. Sheriff Kellerman learned about the incident and advised Woods that he did not want Woods to have Clark in his car; he did not otherwise discipline Woods for the incident. Woods acknowledged that his conduct violated Rule 21 of the Manual regarding unauthorized persons in police vehicles. Clark subsequently pleaded guilty to the felony charge of possession of a controlled substance, at which point Chief Deputy Michael Plumlee advised Woods that the Manual prohibited deputies from associating with convicted felons.

Notwithstanding the direct order from Sheriff Kellerman and the warning from Chief Deputy Plumlee, in August 2000 Woods agreed to allow Clark to accompany him to Springfield, Illinois, where Woods had police business. He picked up Clark in a marked police car. Woods knew that allowing Clark to ride in his car would violate the Sheriff's direct order. Two months later Sheriff Kellerman learned

about the trip and initiated an investigation. He spoke with Clark, who admitted that he had accompanied Woods to Springfield. Sheriff Kellerman and his attorney then met with Woods and Woods's union attorney; at that meeting, Woods admitted that Clark rode with him to Springfield. After the meeting the Sheriff offered Woods the chance to resign, but Woods rejected that option. The parties attempted to negotiate a lesser punishment for Woods, but when they could not reach agreement, Sheriff Kellerman fired Woods on October 17, 2000.

In a memorandum to Woods, Sheriff Kellerman stated that Woods was fired "for [his] association with Joseph Clark who recently plead guilty to felony charges pertaining to cocaine and methamphetamine" and for "disobedience of orders to [him] pertaining to having contact with Joseph Clark." The memorandum also stated that Woods had violated numerous provisions of the Manual, including rules regarding disobedience of orders (Rule 2), associating with persons convicted of a felony (Rule 8), having unauthorized persons in a police vehicle (Rule 21), not being truthful (Rule 25), and engaging in conduct that has a tendency to destroy respect for or confidence in the Sheriff's Office (Rule 33). Woods grieved his dismissal through his union, but it was denied. As a result of his termination from the Perry County Sheriff's Office, Woods also was decertified as a D.A.R.E. officer.

Woods filed a complaint with the EEOC alleging that he was terminated on the basis of his race and was denied his constitutional right to equal protection of the laws. After the EEOC issued a right-to-sue letter, Woods filed this suit in the district court, asserting that Sheriff Kellerman's actions had violated 42 U.S.C. § 1981 and the Equal Protection Clause of the Fourteenth Amendment. The district court dismissed with prejudice all of his claims against the County and the Sheriff's Office; Woods has not pursued those claims on appeal, and thus we have no need to discuss them further.

After discovery the district court granted Sheriff Kellerman's motion for summary judgment, concluding that Woods had failed to prove discrimination under the "direct" method because he provided no evidence apart from his own hearsay testimony that others had stated that Sheriff Kellerman was racist. The court also determined that Woods had not proven discrimination under the indirect method of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), because he did not show that any similarly-situated white employees were treated differently from himself or that Sheriff Kellerman's proffered reason for firing him was a pretext for discrimination. The court rejected Woods's equal protection claim because he failed to demonstrate that he was treated differently from individuals outside the protected class.

## II

On appeal Woods has focused on the district court's decision to grant summary judgment to Sheriff Kellerman on the §§ 1981 and 1983 claims. We review the district court's determination *de novo*, taking all of the facts and reasonable inferences drawn therefrom in Woods's favor. *Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 545 (7th Cir.2002).

Woods first asserts that the district court was mistaken in its evaluation of his § 1981 claim, insofar as it rested on direct proof of race discrimination. He argues that two statements from fellow Sheriff's Office employees show that Sheriff Kellerman fired him because of his race: 1) during a conversation between Woods and Liz Phillips, an African–American dis-

patcher, Phillips allegedly stated that Sheriff Kellerman was prejudiced against blacks; and 2) in response to Woods's comment that Sheriff Kellerman had problems with him because he was black, Chief Deputy Plumlee responded, "you know, well, you're right." These statements fall short of direct evidence of discrimination for several reasons. First, the only person to testify to the statements was Woods himself, and so (as the district court recognized) they are inadmissible hearsay. *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir.2002). Moreover, Woods did not present any evidence that either statement was made contemporaneously with his termination or was causally related to Sheriff Kellerman's decision-making process, nor did he establish a "real link between the [alleged] bigotry and an adverse employment action." *Gorence v. Eagle Food Ctrs., Inc.*, 242 F.3d 759, 762 (7th Cir. 2001); *see also Markel v. Board of Regents of the Univ. of Wis. Sys.*, 276 F.3d 906, 910 (7th Cir.2002). The district court therefore was correct to conclude that Woods had no direct evidence of discrimination.

Woods also argues that the district court erred by rejecting his indirect method of proving his § 1981 claim, using the *McDonnell Douglas* approach. *See Alexander v. Wisconsin Dep't of Health and Family Servs.*, 263 F.3d 673, 682 (7th Cir. 2001) (*McDonnell Douglas* indirect analysis applicable to § 1981 claims). In order to meet his initial burden under *McDonnell Douglas*, Woods needed to set forth a *prima facie* case of discrimination by demonstrating that 1) he is a member of a protected class; 2) he was meeting the legitimate expectations of his employer at the time of his discharge; 3) he was discharged; and 4) similarly situated employees outside of the protected class were treated more favorably. *Peters*, 307 F.3d at 545. The district court concluded that Woods met the first three elements, but

failed to establish that any similarly-situated white employees were treated differently than he was.

Here, as in the district court, Woods identifies a number of white Sheriff's Office employees who engaged in misconduct but were not terminated. When disparate discipline is asserted, a plaintiff must demonstrate that he or she was punished differently from other employees who are "similarly situated with respect to performance, qualifications, and conduct." *Radue v. Kimberly–Clark Corp.*, 219 F.3d 612, 617 (7th Cir.2000). Employees are only similarly situated, however, if they deal with the same supervisor, are subject to the same standards, and engage in similar misconduct. *Id.* at 617–18.

█ In his brief, Woods argues that several white employees were comparable to him, yet they were not fired for their infractions. He first identifies two correctional officers, Estep and Helsley, who were suspended rather than fired by Sheriff Kellerman after they violated departmental rules. Woods, however, was a deputy patrolman and D.A.R.E. officer, not a correctional officer, and he presented no evidence to show that the positions were comparable or subject to the same standards. *Id.* at 618; *see also Hoffman–Dombrowski v. Arlington Int'l Racecourse, Inc.*, 254 F.3d 644, 651 (7th Cir.2001) (individuals holding different positions not similarly situated); *Peters*, 307 F.3d at 546 (plaintiff bears burden of establishing similarity between himself and the allegedly comparable employees). Additionally, the conduct for which Woods was terminated is not similar to that of the correctional officers – an inmate escaped from jail under Estep's watch (although Estep apparently prevented a second from also escaping at the same time), and Helsley was

caught sleeping on the job. *Peters*, 307 F.3d at 547; *Radue*, 219 F.3d at 618.

Second, Woods claims he is similarly situated to two white deputy patrolmen who violated department rules but were not fired. Jerry Speers was not disciplined after a county resident complained that he was harassing her by driving back and forth in front of her house in a patrol car. But Woods failed to establish that Speers's conduct was as severe as his, because there is no evidence that Speers had violated a superior's order not to engage in that conduct. *See Peters*, 307 F.3d at 547. Woods also asserts that Speers and Jamie Ellermeyer were not disciplined after an incident in which they pulled over a motorist who appeared to be drunk but decided not to administer a breathalyzer test or take him into custody. The decision to leave a dangerous driver on the road, Woods argues, violated a departmental rule regarding neglect of duty. But Woods again has not shown that their conduct was comparable to his, because Sheriff Kellerman's undisputed deposition testimony shows that officers have discretion whether to ticket motorists and thus this decision, while perhaps ill-advised, did not amount to a violation of any department rules.

Woods also asserts that two other employees violated some of the same rules he did but were not punished. He points out that Sheriff Kellerman himself was not disciplined when he was a deputy sheriff after he refused to obey a superior's order. But Sheriff Kellerman obviously was not under the same supervisor as Woods (since Woods's ultimate supervisor was Sheriff Kellerman at the time he was disciplined), and so this earlier incident cannot help Woods. *See Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir.2002) (employees with different supervisors not similarly situated). He also argues that Chief Deputy Plumlee

played golf with a convicted felon but was not punished for violating the department's rule against consorting with criminals. Sheriff Kellerman's uncontradicted evidence, however, shows that Chief Deputy Plumlee had not been ordered not to see the person in question. *See Peters*, 307 F.3d at 547. Additionally, Woods and Chief Deputy Plumlee did not hold the same job at the time, and they were therefore not similarly situated. *Hoffman–Dombrowski*, 254 F.3d at 651.

Woods also makes a broad assertion that "Sheriff Kellerman has not enforced department Rule 21 regarding unauthorized persons in police vehicles other than in regard to Deputy Woods." Although he states that "[e]very deputy has operated a patrol car with unauthorized persons in the vehicle," he did not provide any evidence that other deputies ignored an explicit order not to have a particular individual in their car, as he did, and thus he failed to establish that the other deputies were similarly situated. *See Peters*, 307 F.3d at 547. The district court therefore correctly held that Woods failed to establish a *prima facie* case of race discrimination under § 1981.

Woods also challenges the district court's determination that he failed to establish that Sheriff Kellerman's proffered reason for firing him was merely a pretext for discrimination. We need not reach this argument, because Woods failed to establish a *prima facie* case of race discrimination. Even if we did consider it, however, Woods failed to present evidence that Sheriff Kellerman's stated reasons for firing him were pretextual. In the discrimination context pretext is "deceit used to cover one's tracks." *Grayson v. O'Neill*, 308 F.3d 808, 819 (7th Cir.2002) (quoting *Grube v. Lau Indus., Inc.*, 257 F.3d 723, 730 (7th Cir.2001)). To demonstrate pretext, Woods needed to establish that Sheriff Kellerman's reasons for firing him had

no basis in fact, did not actually motivate his decision, or were insufficient to support the decision. *Grayson,* 308 F.3d at 820. Woods asserts that he had a worthy reason for disregarding the order about Clark, namely, that Clark was threatening to commit suicide, and Woods felt entitled under the Law Enforcement Code of Ethics to take steps to safeguard Clark's life. But he does not contest that his conduct violated numerous departmental rules and was in direct contravention to Sheriff Kellerman's order not to have Clark in his car, nor does he dispute that violating departmental rules constitutes an adequate basis for terminating his employment. Woods therefore did not demonstrate that Kellerman's proffered reason for firing him was untruthful and pretextual.

 Woods also argues that the district court erroneously concluded that he failed to demonstrate that Sheriff Kellerman's actions violated his equal protection rights. He asserts that the district court erred in granting summary judgment because the evidence showed that "Kellerman's decision to terminate [him] for rules violations is an action that, though taken only once, exhibits a custom of favoring white deputies over the only black deputy." In support of his argument, Woods cites *Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), for the proposition that a governmental entity may be liable when one of its policymaking employees violates an individual's constitutional rights. But that case is inapposite because it dealt with *municipal* liability for single discriminatory act by a municipal employee, not *individual* liability. *See id.* at 480–484. To the extent that Woods is attempting to argue that the district court erred by dismissing his equal protection claims against the county defendants, we will not consider it because he waived it by never raising this argument in the district court. (Indeed, he did not even file a response to the defendants' motion to dismiss his claims against the County and the Sheriff's Office.) *Grayson v. City of Chicago,* 317 F.3d 745, 751 (7th Cir.2003).

To the extent that Woods is asserting that the district court erroneously granted summary judgment to Sheriff Kellerman on his equal protection claim, his argument is also without merit. To avoid summary judgment, Woods needed to establish that 1) he is a member of a protected class; 2) he was similarly situated to members of an unprotected class; and 3) he was treated differently than members of the unprotected class. *Salvadori v. Franklin Sch. Dist.,* 293 F.3d 989, 997 (7th Cir.2002). The district court properly granted summary judgment on Woods's equal protection claim, however, because as with his race discrimination claim he failed to demonstrate that he was treated differently from any similarly situated white employees. *Id.* at 998; *Ibarra v. Martin,* 143 F.3d 286, 292 (7th Cir.1998).

For these reasons, we AFFIRM the judgment of the district court.