**Mary Jane CONEY, Plaintiff– Appellant,**

v.

**PROMOTIONS UNLIMITED CORP., Ira Greenberg, and David Maciuk, Defendants–Appellees.**

No. 03–4298.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 6, 2004.

Decided Oct. 28, 2004.

Before BAUER, COFFEY, and EVANS, Circuit Judges.

**236**

## ORDER

Mary Jane Coney sued Promotions Unlimited[*] under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and 42 U.S.C. § 1981, alleging that Promotions discriminated against her on the basis of her "ethnic origin, heritage and descent" (Puerto Rican) when it fired her for speaking Spanish in front of the company's president, Ira Greenberg. The district court granted summary judgment for Promotions because no evidence contradicted Coney's supervisor's testimony that he fired Coney for a non-discriminatory reason—her inability to handle the responsibilities of her job.

In 2000 Coney was hired by David Maciuk to work in the sales department at Promotions, an advertising company. She was a "floater," responsible for taking orders from clients when employees regularly assigned to those accounts were absent. In May 2001 Coney was chosen to replace a resigning employee responsible for Promotions' Puerto Rican accounts. She was selected at least in part based on her ability to speak Spanish. After a training period, Coney was placed in charge of Promotions' Puerto Rican business, consisting of two large accounts: Blanco, a wholesaler, and Aliadas, a group of pharmacies.

Each month, Coney was required to complete a number of different tasks. At the beginning of the month, she was to provide Aliadas and Blanco with an order book containing some 700 items from which they could select items they wished to promote. On the basis of these requests, Promotions created a sample custom ad. Coney was responsible for sending the sample ad and an order book containing all of the advertised items to Aliadas's and Blanco's stores. Once the stores received the ad and order book, Coney was responsible for soliciting the stores' orders, and taking and confirming orders by telephone to ensure correct quantities. After the orders were confirmed, Promotions purchased the requested merchandise and shipped it to Puerto Rico. To satisfy Puerto Rican customs requirements, Coney was required to send Aliadas and Blanco invoices for all items placed in the shipping container in advance of the shipment.

By September 2001, Promotions began to believe that Coney could not handle her job responsibilities, so other employees were assigned to help her. Her workload was also modified. In addition, another employee, Annissa Martini, who also worked as Maciuk's secretary, was assigned to the Puerto Rican clients. Coney was assigned 105 domestic accounts to compensate for her decreased workload. Martini assisted her with these accounts as well.

Shortly after Promotions effected this change, the company began receiving reports of mistakes Coney made in serving the Puerto Rican clients. Two stores reported they were double billed in one month; three of Coney's domestic accounts reported they had called Coney to place Valentine's Day orders, but Coney neglected to call them back; and Aliadas's representative, Ana Rodriguez, reported an invoice mixup: invoices for merchandise earmarked for Blanco had mistakenly been sent to Aliadas, and vice versa, causing delays in Puerto Rican customs, and further delays in shipping the merchandise to member stores.

[*] We do not address the claims against Maciuk and Greenberg—individuals whom Coney believes are responsible for the contested employment decision—because they are not proper parties. *See Carver v. Sheriff,* 243 F.3d 379, 381 (7th Cir.2001) (holding that a suit under Title VII must proceed against an employer as an entity, not against its employees).

In January 2002, Rodriguez complained in writing to Promotions about Coney's work, and called for her replacement. In February Maciuk met with Rodriguez and the Aliadas group to discuss its concerns about Coney's service. At the meeting, Rodriguez pointed out Coney's failure to ensure the accuracy of the November order book, causing Aliadas to advertise items in its circular that they did not actually have in stock. As a result, state officials warned Aliadas it had run afoul of "bait-and-switch" laws. After the meeting, Maciuk removed Coney from all the domestic accounts she had been assigned in September, and further reduced her job duties on the Puerto Rican accounts.

From March 11th through 13th, Blanco representatives met with Promotions staff at Promotions's headquarters. At the start of a meeting on the 13th with Greenberg—recall he's Promotions's president—Coney spoke in Spanish to one of Blanco's representatives (Coney claims she noticed "a puzzled look" by one of the reps, and to be helpful, merely translated Greenberg's statement that he "was ready to meet with them"). Greenberg became very upset, and asked her to speak English so he could understand what she was saying to the client: "I said, Mary Jane, don't talk Puerto Rican, talk English, so I can understand what it's about." Coney recalled the incident differently. At her deposition she claimed Greenberg said nothing to her when she spoke Spanish, and found out only later, from conversations with Coney's secretary, and another Promotions' employee, that Greenberg "was pissed off" because she used Spanish during the meeting.

On March 15th, Maciuk fired Coney. He testified later by affidavit and in his deposition that he decided to fire Coney in February—after the meeting with Aliadas—but because February was a busy time at Promotions, he did not fire her immediately. He testified that he alone decided to terminate Coney's employment, though he did "run the decision by Greenberg." Martini testified that she knew the Puerto Rican clients had reported problems with Coney's service, often assisted Coney in her job duties even before she was assigned to help Coney, and learned of Maciuk's decision to terminate Coney in February. According to Coney, Maciuk told her she was being fired because "Ira no longer wants to pay anybody for that number of accounts, and so we're just going to take your accounts and disperse them throughout the sales reps," leading her to believe it was Greenberg who fired her.

The district court granted summary judgment on Coney's discrimination claim because she failed to show direct evidence of discrimination. Even if speaking Spanish were an impermissible basis for firing her, the court continued, there was no evidence that her speaking Spanish played any role in Promotions's decision to terminate her employment. Furthermore, any inference that could be drawn from the timing of Coney's termination was dispelled by Maciuk's unrebutted testimony that he decided to fire Coney in February, a month before Coney spoke Spanish at the meeting. Moreover, the court added, although Greenberg was annoyed she spoke Spanish at the meeting, he told his secretary that Coney was fired because she was unable to perform the demands of the job adequately.

We review de novo the district court's decision to grant summary judgment to Promotions. *Oest v. Ill. Dep't of Corr.*, 240 F.3d 605, 610 (7th Cir.2001). Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted if there remains no genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477

U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To determine whether there remains a material issue of fact for trial, we review the facts in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

On appeal Coney attempts to prove discrimination under the direct method of proof, requiring her to come forward with "evidence that, without reference or explanation, ties the illicit motive with the adverse employment action." *See Lucas v. Chicago Transit Auth.*, 367 F.3d 714, 728 (7th Cir.2004). She explicitly states in her brief on appeal that she foregoes any argument under the indirect burden of proof set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To withstand summary judgement, she must provide either direct evidence (evidence proving the fact in question "without reliance on inference or presumption") or circumstantial evidence (evidence raising an inference of intentional discrimination by the decisionmaker). *See Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir.2003) (quotations and citations omitted). Specifically, Coney must come forward with evidence that a decisionmaker expressed discriminatory feelings around the time of and in reference to her termination. *See Gorence v. Eagle Food Ctrs. Inc.*, 242 F.3d 759, 762 (7th Cir.2001); *see also Volovsek v. Wis. Dep't of Agric., Trade, and Consumer Prot.*, 344 F.3d 680, 690 (7th Cir.2003) (holding that a comment by supervisors that they were "keeping [women] barefoot and pregnant," overheard moments after the contested employment decision, was "so close in time and in substance" to the

decision as to preclude summary judgment).

Coney insists the district court's conclusion was wrong because she presented direct evidence of discrimination sufficient to raise an issue of material fact for trial. She says three facts prove she was fired as a result of speaking Spanish at the meeting: (1) Maciuk testified he did not decide to fire her before the March meeting, (2) Greenberg directed her to speak English on March 13th,[**] and (3) Greenberg told his secretary after the meeting that he was angry at Coney.

Maciuk's deposition testimony does not constitute direct evidence of discrimination because his statement that he hadn't decided to fire Coney before the March 11th meeting stemmed from his confusion about whether Aliadas visited Promotions on March 11th or February 8th. Maciuk's attorney recognized Maciuk's confusion and corrected his error by clarifying—at three different points in the deposition— the particular meeting that was the subject of his testimony. Even taking the facts in the light most favorable to Coney, the only reasonable interpretation of Maciuk's testimony is not that he "has something to hide," as Coney suggests, but rather that his comments regarding his decision to fire Coney relate to February 8th—when Aliadas visited Promotions—and not to March 11th, when Coney spoke Spanish at the meeting. Maciuk's deposition testimony that he decided to terminate Coney at "the conclusion of the meeting" and in response to Rodriguez's complaints on February 8th is consistent with his affidavit testimony that he decided to terminate Coney "immediately after" the February 8th meeting with Aliadas.

---

[**] It is peculiar that Coney points to this "fact" as direct evidence of discrimination. Coney testified at her deposition that Greenberg said nothing to her that led her to believe he was angry at her after she spoke Spanish.

Greenberg's angry statements to Coney and to his secretary after Coney spoke Spanish in front of him on March 13th also fail as direct evidence of discrimination because (1) Greenberg was not a decision-maker, and (2) he did not make these statements in reference to Coney's termination. Maciuk's testimony that he alone decided to fire Coney is uncontested, and therefore Greenberg's feelings about Coney's Spanish speaking are irrelevant. *See Gorence*, 242 F.3d at 762 (holding that evidence of a non-decisionmaker's discriminatory feelings is not evidence of discrimination). Even if she had presented some evidence of Greenberg's participation in the decision to fire her, Coney's claim would still fail because Greenberg's angry statements were not made in reference to her termination. *See Gorence*, 242 F.3d at 762 (finding decisionmaker's statement that "he didn't want to talk to any middle-aged menopausal women," was not evidence of discrimination because he interviewed plaintiff and decided not to hire her because she was not qualified for the job); *Walker v. Glickman*, 241 F.3d 884, 889 (7th Cir.2001) (finding no illegal criteria entered employment decision because evidence was not related to employment action).

Coney has failed to prove discrimination under the direct method because she has not submitted any evidence showing that discrimination played a role in the decision to fire her.

AFFIRMED.